1   NANCY HOFFMEIER ZAMORA (State Bar No. 137326)
    U.S. Bank Tower
2   633 West 5th Street, Suite 2600
    Los Angeles, California   90071
3   (213) 488-9411   FAX:   (213) 488-9418
    e-mail:  zamora3@aol.com
4
    Chapter 7 Trustee
5

6

7                    UNITED STATES BANKRUPTCY COURT

8                  CENTRAL DISTRICT OF CALIFORNIA

9                   SAN FERNANDO VALLEY DIVISION

10  In re                          )   Case No. 1:16-bk-10099-VK
                                    )
11  FRANK ADLER AND LAUREN ADLER,   )   Chapter 7
                                    )
12                 Debtors.         )   MOTION FOR ORDER
                                    )   AUTHORIZING TRUSTEE TO SELL
13                                  )   REAL PROPERTY FREE AND
                                    )   CLEAR OF LIENS; MEMORANDUM
14                                  )   OF POINTS AND AUTHORITIES;
                                    )   DECLARATIONS IN SUPPORT
15                                  )
                                    )   [FILED CONCURRENTLY WITH
16                                  )   NOTICE OF MOTION FOR ORDER
                                    )   AUTHORIZING TRUSTEE TO SELL
17                                  )   REAL PROPERTY FREE AND
                                    )   CLEAR OF LIENS]
18                                  )
                                    )   DATE:  February 9, 2017
19                                  )   TIME:  2:00 p.m.
    _____)   CTRM:  301
20

21

22

23

24

25

26

27

28

    Adler/sale motion

# TABLE OF CONTENTS

PAGE

MOTION . . . . . . . . . . . . . . . . . . . . . . . 1.

  I.    INTRODUCTION . . . . . . . . . . . . . . . . . 1.

  II.   LIENS AND PROPOSED DISBURSEMENTS FROM SALE ESCROW . 2.

  III.  LIENS NOT TO BE PAID . . . . . . . . . . . . . 5.

  IV.   FINDING OF GOOD FAITH PURCHASER . . . . . . . . . 7.

  V.    CONCLUSION . . . . . . . . . . . . . . . . . . 7.

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . 8.

  I.   FACTS . . . . . . . . . . . . . . . . . . . . . . 8.

    A.   GENERAL BACKGROUND . . . . . . . . . . . . . . 8.

    B.   THE REAL PROPERTY . . . . . . . . . . . . . . . 8.

    C.   WAIVER OF HOMESTEAD EXEMPTION AND

         PRIORITY TAX CLAIMS . . . . . . . . . . . . . . 8.

    D.   REAL ESTATE BROKER AND COMMISSION CALCULATION . . . 9.

    E.   MARKETING THE REAL PROPERTY . . . . . . . . . . . 10.

    F.   TERMS OF PROPOSED SALE OF REAL PROPERTY . . . . . 10.

  II.  ARGUMENT . . . . . . . . . . . . . . . . . . . . 13.

    A.   THE REAL PROPERTY IS PROPERTY OF THE ESTATE . . . . 13.

    B.   THE COURT HAS AUTHORITY TO APPROVE THE SALE

         OF THE REAL PROPERTY FREE AND CLEAR OF ANY

         INTEREST AND LIENS PURSUANT TO 11 U.S.C. §§363(b)

         AND (f) . . . . . . . . . . . . . . . . . . . 13.

         1.   Liens to be paid in full . . . . . . . . . . 15.

         2.   Liens not to be paid . . . . . . . . . . . . 16.

              a.   Full Reconveyance of Chase TD . . . . . . 16.

              b.   Subordinated FTB Tax Lien . . . . . . . . 16.

. . . . .

C.   SALE OF THE REAL PROPERTY FREE AND CLEAR OF LIENS IS
     IN THE BEST INTEREST OF CREDITORS OF THE ESTATE .   17.

D.   NOTICE OF THE SALE IS ADEQUATE  . . . . . . . .   17.

E.   BUYER SHOULD BE DEEMED A "GOOD FAITH PURCHASER"
     PURSUANT TO 11 U.S.C. §363(m) . . . . . . . . .   17.

F.   THE BROKER COMMISSION SHOULD BE APPROVED  . . . .   19.

G.   TRUSTEE MAY SELL PROPERTY OF THE ESTATE
     WITHOUT OVERBID . . . . . . . . . . . . . . .   19.

III. CONCLUSION . . . . . . . . . . . . . . . . .   19.

DECLARATION OF BEHNAZ TAVAKOLI  . . . . . . . . . .   22.

DECLARATION OF NANCY HOFFMEIER ZAMORA . . . . . . .   25.

EXHIBIT A -- AGREEMENT  . . . . . . . . . . . . .   32.

EXHIBIT B -- HOA CLAIM, INVOICES  . . . . . . . .   42.

EXHIBIT C -- PRELIMINARY TITLE REPORT . . . . . . .   64.

EXHIBIT D -- ESTIMATED CLOSING STATEMENT  . . . . .   86.

EXHIBIT E -- PRIORITY TAX CLAIMS  . . . . . . . . .   82.

EXHIBIT F -- FULL RECONVEYANCE  . . . . . . . . . .   96.

1

**TABLE OF AUTHORITIES**

2  <u>CASES</u>                                                                    <u>PAGE</u>

3  *In re Abbotts Dairies of Pennsylvania, Inc.,*

4          788 F.2d 143 (3d Cir. 1986)  . . . . . . . . . . . . .    18.

5  *In re Bakalis*, 200 B.R. 525 (Bankr. E.D.N.Y. 1998)  . . . .    19.

6  *In re Blue Coal Corp.*, 67 B.R. 798 (Bankr. Pa. 1994)  . . .    19.

7  *In re Blue Coal Corp.*, 168 B.R. 553 (Bankr. Pa. 1994)  . . .    19.

8  *Community Thrift & Loan v. Suchy (In re Suchy),*

9          786 F.2d 900 (9th Cir. 1985) . . . . . . . . . . . . .    18.

10  *In re Cummins*, 15 B.R. 893 (BAP 9th Cir. 1981)  . . . . . .    18.

11  *Ewell v. Diebert (In re Ewell),*

12          958 F.2d 276 (9th Cir. 1992) . . . . . . . . . . . . .    18.

13

14  <u>FEDERAL STATUTES</u>

15  11 U.S.C. §327  . . . . . . . . . . . . . . . . . . . .    19.

16  11 U.S.C. §363(b)  . . . . . . . . . . . . . . . . .    1, 13.

17  11 U.S.C. §363(f)  . . . . . . . . . . . . . . . .    1, 13, 14.

18  11 U.S.C. §363(m)  . . . . . . . . . . . .    1, 7, 17, 18, 21.

19  11 U.S.C. §506(c)  . . . . . . . . . . . . . . . .    1, 4, 6.

20  11 U.S.C. §507(a)  . . . . . . . . . . . .    1, 6, 7, 17, 20.

21  11 U.S.C. §507(a)(1)(C)  . . . . . . . . . . . . .    4, 6, 16.

22  11 U.S.C. §507(a)(8)  . . . . . . . . . . . . . .    5, 8, 14.

23  11 U.S.C. §522(c)(1)  . . . . . . . . . . . . . .    1, 5, 8, 14.

24  11 U.S.C. §523(a)(1)(A)  . . . . . . . . . . . . .    1, 5, 8, 14.

25  11 U.S.C. §541(a)(1)  . . . . . . . . . . . . . . . .    13.

26  11 U.S.C. §724  . . . . . . . . . . . . . . . . . . .    1.

27  11 U.S.C. §724(a)  . . . . . . . . . . . . . .    6, 7, 16, 17, 20.

28  11 U.S.C. §724(b)  . . . . . . . . . . . . . .    6, 7, 16, 17, 20.

11 U.S.C. §726 . . . . . . . . . . . . . . . . . . . 1.

11 U.S.C. §726(a)(4) . . . . . . . . . . . . 6, 7, 16, 17, 20.

RULES

Federal Rule of Bankruptcy Procedure 6004(h) . . . . . . . 21.

# I.  **INTRODUCTION**

Nancy Hoffmeier Zamora, Chapter 7 Trustee ("Trustee") of the bankruptcy estate (the "Estate") in the above-captioned chapter 7 bankruptcy case (the "Case") of debtors Frank Adler and Lauren Adler ("Debtors") hereby respectfully moves the Court for an order approving sale of that certain residential real property commonly known as 1028 Lambourne Place, Oak Park, California, 91377-5809, identified by Ventura County Assessor's Parcel Number 8010263085 (the "Real Property"), with the legal description set forth in the Preliminary Title Report prepared by Fidelity National Title Company ("Title") identified by order number 00141166-994-VNO-SI, dated July 18, 2016 and amended as of December 21, 2016 (the "PTR"), free and clear of any interests and liens pursuant to 11 U.S.C. §§363(b), (f) and (m), 506(c), 507(a), 522(c)(1), 523(a)(1)(A), 724, and 726, and on an "AS-IS, WHERE-IS" basis, to Megan Nelson and Matthew Michael Edward Nelson ("Buyer") for a sales price of $970,000.00 (the "Sales Price") through escrow for sale of the Real Property (the "Sale Escrow") and on the other terms and conditions set forth in that certain Purchase and Sale Agreement and Escrow Instructions (Residential Property) dated December 20, 2016 as modified by Addendum No. 1 dated January 6, 2017 (collectively, the "Agreement").

A true and correct copy of the Agreement is attached as _Exhibit A_ to the Declaration of Nancy Hoffmeier Zamora (the "Trustee Declaration") attached hereto and incorporated herein by reference.

.  .  .  .  .

## II.    **LIENS AND PROPOSED DISBURSEMENTS FROM SALE ESCROW**

Trustee moves for approval and authorization to execute any and all documents necessary to transfer the Real Property from the Estate to Buyer and to pay from the Sale Escrow at Encore Escrow Company, Inc. ("Encore") the following:

A.    the debt secured by undisputed liens consisting of:

1.    the debt secured by the first deed of trust (the "First TD") in the original principal amount of $750,000.00 recorded on December 7, 2005 as instrument no. 20051207-0300644 of Official Records in the Office of the Recorder of Ventura County, California ("Official Records") for the benefit of World Savings Bank, FSB, its Successors and/or Assignees, the most recent of which is Wells Fargo Bank, N.A., its successors and/or assigns, according to that certain motion for relief from stay filed as docket no. 77 in the Case ("First TD Holder"), plus accrued interest and other amounts that are estimated to total approximately $900,000.00 as of August 5, 2016, for which First TD Holder has agreed to accept, as payment in full, a payment capped at the amount of $825,000.00 (the "First TD Payoff") pursuant to a demand to be provided to Encore by counsel for First TD Holder and its servicer, Fay Servicing (the "First TD Demand"), referred to at exception no. 15 in the PTR (a true and correct copy of the PTR is attached as <u>Exhibit C</u> to the Trustee Declaration and incorporated herein by reference),

2.    the homeowner association fees owed to Regency Hills Neighborhood Homeowners Association (the "HOA") as set forth in that certain Notice of Delinquent Assessment in the original amount of $3,226.83 recorded as instrument no. 20150615-00090546-

0 in the Official Records plus any other outstanding and unpaid assessments and any related transfer fees charged by the HOA through its agent, Ross Morgan & Co. (collectively, the "HOA Fees"), estimated in the total amount of approximately $8,375.00 based on claim no. 5 filed in the Case (the "HOA Claim"), subject to a final payoff demand to be provided by the HOA (the "HOA Demand") (a true and correct copy of the HOA Claim is attached as part of Exhibit B to the Trustee Declaration and incorporated herein by reference); and

     3.   pro-rated real property taxes owed to the County of Ventura as of the closing date (the "Property Taxes") estimated in the amount of $1,382.20 as set forth in the estimated closing statement prepared by Encore (the "Estimated Closing Statement") and based on information contained in the PTR but in the final amount based on the closing date of the Sale Escrow (a true and correct copy of the Estimated Closing Statement is attached as Exhibit D to the Trustee Declaration and incorporated herein by reference),

B.    the reduced real estate broker commission (the "Broker Commission") of three and one-half percent (3.5%) of the Sales Price of $970,000.00 ($33,950.00) to be divided one percent (1%) ($9,700.00) to Rodeo Realty, Inc. ("Estate Broker") and two and one-half percent (2.5%) ($24,250.00) to Real Living Pacific Realty ("Buyer Broker");

C.    seller's closing costs including, but not limited to, county transfer taxes, escrow fees, title fees, recording fees, and required reports (the "Closing Costs") estimated to be approximately $6,000.00 in the Estimated Closing Statement;

1    D.    reimbursement to Zamora & Hoffmeier, APC for expenses of

2          approximately $10,000.00 advanced for utilities, repairs and

3          maintenance related to the Real Property, the motion filing

4          fee, notary fees, charges for United Parcel Service Federal

5          Express, costs related to recording a certified copy of the

6          petition, the up-front document fee required by Ross Morgan

7          & Co. on behalf of the HOA, and other out-of-pocket costs

8          related to securing, administering and selling the Real

9          Property (the "Z&H Advances") all payable pursuant to 11

10         U.S.C. §§506(c) and 507(a)(1)(C) (a true and correct copy of

11         an invoice with detailed listing for the balance to date of

12         the Z&H Advances (the "Z&H Invoice") is attached as part of

13         Exhibit B to the Trustee Declaration and incorporated herein

14         by reference);

15   E.    outstanding gardening and pool service invoices that total

16         $2,090.00 (the "Gardening and Pool Invoices") (true and

17         correct copies of the Gardening and Pool Invoices are

18         attached as part of Exhibit B to the Trustee Declaration and

19         incorporated herein by reference);

20   F.    the invoice for insurance premiums owed to Trustee Insurance

21         Agency of $5,489.10 (the "Insurance Invoice") (a true and

22         correct copy of the Insurance Invoice is attached as part of

23         Exhibit B to the Trustee Declaration and incorporated herein

24         by reference);

25   G.    the amount of approximately $7,000.00 to Trustee to deposit

26         into the Estate bank account for Estate expenses to be paid

27         pursuant to 11 U.S.C. §§506(c) and 507(a)(1)(C) (the "Estate

28         Expenses"), including fees and expenses of the Estate

accountant and Trustee's expenses in the Case (a true and

correct copy of an invoice with detailed listing for the

balance to date of the Estate Expenses (the "Current Trustee

Expense Invoice") is attached as part of Exhibit B to the

Trustee Declaration and incorporated herein by reference);

and

H.    the balance of the sale proceeds of approximately $70,000.00

(the "Sale Proceeds") to Trustee to deposit into the Estate

bank account for distribution to the Internal Revenue

Service ("IRS") and the Franchise Tax Board ("FTB") for

their respective priority tax claims in the Case that are

nondischargeable and are exceptions to Debtors' homestead

exemption as required by 11 U.S.C. §§522(c)(1),

523(a)(1)(A), and 507(a)(8) (true and correct copies of

amended claim no. 2 filed by FTB and claim no. 4 filed by

IRS (the "Priority Tax Claims") are attached as Exhibit E to

the Trustee Declaration and incorporated herein by

reference).

### III.    LIENS NOT TO BE PAID

In addition to the First TD and the Property Taxes, the PTR

includes another deed of trust and a tax lien identified as item

nos. 16 and 18, respectively, and described below which are not

to be paid:

A.    a deed of trust (the "Chase TD") in the original principal

amount of $405,000.00 recorded on November 29, 2006 as

instrument no. 20061129-251253 of Official Records for the

benefit of Washington Mutual Bank, a Federal Association,

assigned to JPMorgan Chase Bank, National Association

("Chase") pursuant to instrument no. 20130828-150300
recorded on August 28, 2013 in Official Records and for
which a full reconveyance was recorded on May 20, 2015 as
instrument no. 20150520-76510 of Official Records (the "Full
Reconveyance"), all referred to at exception no. 16 in the
PTR (a true and correct conformed copy of the recorded Full
Reconveyance is attached as <u>Exhibit F</u> to the Trustee
Declaration and incorporated herein by reference); and

B.    a California state tax lien in the original amount of
$18,587.10 recorded by FTB on December 10, 2015 as
instrument no. 20151210-0177945-0 of Official Records,
related to certificate number 15329650309 (the "FTB Lien").

The recording of the Full Reconveyance reconveyed any
secured interest in the Real Property to Debtors and extinguished
the Chase TD and any secured debt owed to Chase.   The sale of the
Real Property will be free and clear of the Chase TD.

Pursuant to 11 U.S.C. §724(a) and 11 U.S.C. §726(a)(4),
Trustee seeks to avoid those portions of the FTB Lien that
represent amounts for penalties and interest on penalties.

Pursuant to 11 U.S.C. §724(b), Trustee seeks to subordinate
the FTB Lien to administrative fees and expenses of the Estate
provided to be paid per 11 U.S.C. §§506(c) and 507(a)(1)(C).

Trustee estimates that the amounts of the administrative
fees and expenses (including the Broker Commission of $33,950.00,
the Z&H Advances of approximately $10,000.00, the Insurance
Invoice of $5,489.10, the Gardening and Pool Invoices of
$2,090.00, the Closing Costs of $6,000.00, and the Estate
Expenses of approximately $7,000.00) exceed the amounts of the

1 unavoidable portions of the FTB Tax Lien and that there will be

2 no distribution paid to FTB.

3     Trustee reserves all rights to object to the validity,

4 scope, and priority of all disputed liens, claims and/or

5 interests.  The FTB Lien will attach to the funds received by the

6 Estate from the sale in the same priority, validity, and scope as

7 such lien currently exists against the Real Property subject to

8 11 U.S.C. §§507(a), 724(a) and (b), and 726(a)(4), but the Real

9 Property will be sold free and clear of all liens including, but

10 not limited to, the FTB Lien.

11     **IV.   FINDING OF GOOD FAITH PURCHASER**

12     Trustee requests that the Court's order (the "Sale Order")

13 include a finding that Buyer is a "good faith purchaser" per 11

14 U.S.C. §363(m).

15     **V.   CONCLUSION**

16     This motion (the "Motion") is based on the notice of motion

17 (the "Notice") filed with this Court and served on Debtors,

18 Debtors' counsel, the United States Trustee, all creditors, and

19 other interested parties, and on the memorandum of points and

20 authorities, and the declarations, including exhibits, attached

21 hereto.

22 DATED: January 19, 2016

23

24                   _____

25                   Nancy Hoffmeier Zamora
                  Chapter 7 Trustee

26

27

28

Adler/sale motion                7.

### MEMORANDUM OF POINTS AND AUTHORITIES

This Memorandum of Points and Authorities is submitted in support of the Motion to Sell Real Property Free and Clear of Liens (the "Motion") to which it is attached.  The capitalized terms have the meanings ascribed to them in the Motion unless otherwise defined herein.

## I.   FACTS

### A.   GENERAL BACKGROUND

1.   On January 13, 2016 (the "Petition Date"), Debtors filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code commencing the Case.

2.   Trustee is the duly appointed, acting and permanent Chapter 7 Trustee of the Estate in the Case.

### B.   THE REAL PROPERTY

3.   The Real Property is the primary asset of the Estate. The Real Property was Debtors' residence on the Petition Date. The Debtors listed the Real Property in their schedule A.

4.   According to the PTR, title to the Real Property is vested in:  "Frank Adler and Lauren Adler, husband and wife, as joint tenants" subject to the Case.

### C.   WAIVER OF HOMESTEAD EXEMPTION AND PRIORITY TAX CLAIMS

5.   Debtors claimed a homestead exemption in the amount of $100,000.00 pursuant to their amended schedule C (the "Homestead Exemption").  FTB and IRS, respectively, filed the Priority Tax Claims that are exceptions to Debtors' claimed homestead exemption pursuant to 11 U.S.C. §§522(c)(1), 523(a)(1)(A), and 507(a)(8).  Consequently, Debtors are not entitled to receipt of any otherwise exempt funds unless and until the nondischargeable

Adler/sale motion                                8.

1  Priority Tax Claims are paid.  Debtors stipulated with Trustee to

2  a waiver of the Homestead Exemption to acknowledge that the

3  nondischargeable Priority Tax Claims are to be paid from the Sale

4  Proceeds.  Trustee will issue Estate distributions to IRS and FTB

5  from the Sale Proceeds after payment of all administrative

6  expenses of the Estate, subject to Court approval, including

7  approved fees and expenses of the Estate's accountant and

8  Trustee's expenses.

9  **D.  REAL ESTATE BROKER AND COMMISSION CALCULATION**

10      6.  On June 1, 2016, the Court entered that certain order

11  (the "Employment Order") authorizing Trustee to employ Estate

12  Broker as real estate broker to market and sell the Real Property

13  effective as of June 1, 2016 [docket no. 63].  Estate Broker

14  listed and actively marketed the Real Property for sale.  Estate

15  Broker informed Trustee regarding all marketing activity related

16  to the Real Property.  Estate Broker received and presented seven

17  (7) written offers to Trustee.  Trustee, with the assistance of

18  Estate Broker, made counter-offers.  Thereafter,  Trustee,

19  through Estate Broker, negotiated the Agreement and opened the

20  Sale Escrow with Buyer.

21      7.  The Employment Order provides for the Broker Commission

22  to be calculated based on six percent (6%) of the gross sales

23  price for the Real Property.  Estate Broker and Buyer Broker both

24  agreed to a lesser percentage.  Estate Broker agreed to accept

25  one percent (1%) of the Sales Price ($9,700.00) and Buyer Broker

26  agreed to accept two and one-half percent (2.5%) of the Sales

27  Price ($24,250.00).  The total Broker Commission requested for

28  . . . . .

the Court's approval is $33,950.00 based on the Sales Price of
$970,000.00.

**E.  MARKETING THE REAL PROPERTY**

8.   Estate Broker actively marketed the Real Property with
Debtors' cooperation.  Debtors vacated the Real Property on or
about June 1, 2016.  Behnaz Tavakoli, the primary agent of Estate
Broker responsible for marketing the Real Property, arranged for
cleaning, maintenance and repairs to be performed to prepare the
Real Property for Marketing.  Trustee's law firm, Z&H, advanced
the funds to pay costs incurred for closing, maintenance,
repairs, and utilities. Estate Broker conducted twenty-six (26)
open houses and ten (10) individual showings of the Real Property
to real estate agents and prospective buyers.  Estate Broker
responded to at least fifty (50) additional inquiries.  Estate
Broker listed the Real Property on the multiple listing service
(the "MLS") and various well-known internet real estate sites
such as Trulia, Redfin, Zillow, and Realtor.com (the "Internet
Sites").

**F.  TERMS OF PROPOSED SALE OF REAL PROPERTY**

9.   Trustee desires to maximize distributions to creditors
of the Estate by selling the Real Property free and clear of
liens and on an "AS-IS, WHERE-IS" basis to Buyer for the Sales
Price of $970,000.00 and pursuant to the other terms set forth in
the Agreement.

10.   The Sales Price offered by Buyer is the highest and
best offer that has been received, and not withdrawn, as of the
date of the Motion.  Trustee received a total of seven (7)
written offers ranging from $800,000.00 to $980,000.00.  The two

(2) potential buyers who offered $980,000 negotiated counter-offers with Trustee and then both withdrew their offers.  Trustee believes the Sales Price represents the fair market value for the Real Property considering current market conditions and the marketing efforts of Estate Broker, including listing of the Real Property on the MLS and the Internet Sites, and multiple showings of the Real Property to real estate agents and potential buyers.

11.  Trustee has no relationship to or with Buyer and is not related to Buyer in any manner.  Trustee has reviewed Debtors' schedules and the claims register and claims filed in the Case.  Based on this review, Trustee has determined that Buyer is not a creditor of the Estate.  Trustee believes that Buyer is a good faith purchaser.  Trustee and Buyer negotiated at "arms-length."

12.  Estate Broker provided Trustee with information necessary to satisfy Trustee that the immediate sale of the Real Property to Buyer is in the best interest of the Estate.

13.  Encore prepared the Estimated Closing Statement to assist Trustee with analysis of the amounts to be paid through the Sale Escrow from the Sales Price.

14.  As described herein and in the exhibits attached to the Trustee Declaration, the Sales Price ($970,000.00) will provide payment as follows:

     a.    the debt secured by the First TD recorded against the Real Property for the benefit of First TD Holder in the amount of $825,000.00 agreed to by First TD Holder and as will be stated in the First TD Demand to be submitted to Encore;

. . . . .

b.    the HOA Fees estimated at $8,375.00 but in the final
amount in the HOA Demand submitted to Encore;

c.    the Property Taxes estimated at $1,382.20 but in the
final amount based on the closing date for the Sale
Escrow;

d.    the Broker Commission in the reduced amount of
$33,950.00;

e.    the Other Closing Costs estimated at $6,000.00;

f.    the Z&H Advances of approximately $10,000.00;

g.    the Gardening and Pool Invoices of $2,090.00;

h.    the Insurance Invoice of $5,489.10;

i.    the Estate Expenses of approximately $7,000.00; and

j.    the Sale Proceeds to the Estate for distribution to IRS
and FTB for the nondischargeable Priority Tax Claims.

15.    In summary, $970,000.00 provides the payments described
above (approximately $900,000.00) and the Sale Proceeds to
Trustee for distributions to pay the nondischargeable Priority
Tax Claims owed to IRS and FTB (approximately $70,000.00).

16.    The Motion seeks approval and authorization for Trustee
to execute any and all documents necessary to transfer the Real
Property from the Estate to Buyer, and to pay the debt secured by
the First TD, the HOA Fees, the Property Taxes, the Broker
Commission, the Other Closing Costs, the Z&H Advances, the
Gardening and Pool Invoices, the Insurance Invoice, the Estate
Expenses, and the disbursement of the Sale Proceeds to Trustee
for distributions to FTB and IRS for nondischargeable Priority
Tax Claims.

.    .    .    .    .

17.   Trustee seeks the Court's approval to sell the Real Property free and clear of liens and on an "AS-IS, WHERE-IS" basis to Buyer for the Sales Price of $970,000.00, and pursuant to the other terms and conditions set forth in the Agreement.

18.   The Claims Bar Date in the Case was June 7, 2016. According to the claims register in the Case, the total balance of allowed, priority, unsecured claims filed in the Case as of the date of this Motion is $113,415.48 for nondischargeable taxes owed to IRS ($107,133.45) and FTB ($6,282.03).

## II.   ARGUMENT

### A.   THE REAL PROPERTY IS PROPERTY OF THE ESTATE

11 U.S.C. §541(a)(1) provides that property of a debtor's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."

In the instant case, as of the Petition Date, Debtors held title to the Real Property.  Pursuant to 11 U.S.C. §541(a)(1), all property of a debtor is property of the Estate.  Therefore, the Real Property is property of the Estate.

### B.   THE COURT HAS AUTHORITY TO APPROVE THE SALE OF THE REAL PROPERTY FREE AND CLEAR OF ANY INTERESTS AND LIENS PURSUANT TO 11 U.S.C. §§363(b) AND (f)

Trustee seeks this Court's authority to sell the Real Property free and clear of liens pursuant to 11 U.S.C. §§363(b) and (f) of the Bankruptcy Code.  11 U.S.C. §363(b) provides that:

> [t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate.

1    The Real Property was Debtors' residence on the Petition

2    Date.  Debtors claimed the Homestead Exemption of $100,000.00 in

3    their amended Schedule C.  Debtors subsequently waived the

4    Homestead Exemption by stipulation to acknowledge that the

5    nondischargeable Priority Tax Claims are to be paid to IRS and

6    FTB from the Sale Proceeds because the Priority Tax Claims owed

7    to IRS and FTB are exceptions to the claimed Homestead Exemption

8    pursuant to 11 U.S.C. §§522(c)(1), 523(a)(1)(A), and 507(a)(8).

9    No other parties hold any interest in the Real Property except

10   for the lienholders discussed below.

11        11 U.S.C. § 363(f) provides that:

12            [t]he trustee may sell property. . . free and
              clear of any interest in such property of an
13            entity other than the estate, only if -. . .

14            (1)    applicable nonbankruptcy law permits sale
                     of such property free and clear of such
15                   interest;. . .

16            (2)    such entity consents;. . .

17            (3)    such interest is a lien and the price at which
                     such property is to be sold is greater than
18                   the aggregate value of all liens on such
                     property;
19
20            (4)    such interest is in bona fide dispute; or

21            (5)    such entity could be compelled, in a
                     legal or equitable proceeding, to
22                   accept a money satisfaction of such
                     interest.

23        Because subsections (1) through (5) of Bankruptcy Code

24   §363(f) are written in the disjunctive, authority to sell the

25   Real Property free and clear of any and all interests and liens

26   should be granted if, with respect to each lien holder, any of

27   the conditions are met.  In this case, the First TD, the HOA

28   Fees, and the Property Taxes are being paid in full.

Adler/sale motion                       14.

1.  **Liens to be paid in full**.

In the instant case, Trustee proposes to sell the Real Property for the Sales Price of $970,000.00.  If approved by the Court, proceeds from the sale as proposed by Trustee will provide sufficient funds to pay off all undisputed liens in full.

The liens to be paid through the Sale Escrow are:

1.    the debt secured by the First TD recorded against the Real Property for the benefit of First TD Holder in the amount of $825,000.00 for the First TD Payoff based on the First TD Demand to be submitted to Encore;

2.    the HOA Fees of approximately $8,375.00 but in the final amount contained in the HOA Demand to be submitted to Encore; and

3.    the Property Taxes estimated at $1,382.20 but in the final amount calculated based on the date the Sale Escrow closes.

The Sales Price is $970,000.00.  After deducting from the sale proceeds:

The First TD Payoff of $825,000.00 secured by the First TD;

The HOA Fees of approximately $8,375.000;

The Property Taxes estimated at $1,382.20;

The Broker Commission in the reduced amount of $33,950.00;

The Other Closing Costs estimated at $6,000.00;

The Z&H advances of approximately $10,000.00;

The Gardening and Pool Invoices of $2,090.00;

The Insurance Invoice of $5,489.10; and

The Estate Expenses of approximately $7,000.00,

the balance of the Sale Proceeds of approximately $70,000.00 is

to be paid to Trustee, on behalf of the Estate, for distribution
to IRS and FTB for the nondischargeable Priority Tax Claims.

2.   **Liens not to be paid**.

    a.   **Full Reconveyance of Chase TD**

The recording of the Full Reconveyance reconveyed any
secured interest in the Real Property to Debtors and extinguished
the Chase TD and any secured debt owed to Chase.   The sale of the
Real Property will be free and clear of the Chase TD.

    b.   **Subordinated FTB Tax Lien**

The amount of the FTB Tax Lien is approximately $18,587.10,
before subtracting the amounts for penalties and interest on
penalties that Trustee can avoid pursuant to  11 U.S.C. §§724(a)
and 726(a)(4).

11 U.S.C. §724(b) provides for the subordination of
statutory tax liens to the extent of administrative expense
claims, domestic support obligations, and certain other priority
claims.   Pursuant to 11 U.S.C. §724(b), Trustee is authorized to
subordinate the FTB Tax Lien to administrative fees and expenses
of the Estate provided to be paid per 11 U.S.C. §507(a)(1)(C).

Trustee estimates that the amounts of the administrative
fees and expenses (including the Broker Commission of $33,950.00,
the Z&H Advances of approximately $10,000.00, the Insurance
Invoice of $5,489.10, the Gardening and Pool Invoices of
$2,090.00, the Closing Costs of $6,000.00, and the Estate
Expenses of approximately $7,000.00) exceed the amounts of the
unavoidable portions of the FTB Tax Lien and that there will be
no distribution paid to FTB on account of the FTB Tax Lien.

.  .  .  .  .

1    Trustee reserves all rights to object to the validity,

2    scope, and priority of all disputed liens, claims and/or

3    interests.  The FTB Lien will attach to the funds received by the

4    Estate from the sale in the same priority, validity, and scope as

5    such lien currently exists against the Real Property subject to

6    11 U.S.C. §§507(a), 724(a) and (b), and 726(a)(4), but the Real

7    Property will be sold free and clear of all liens including, but

8    not limited to, the FTB Lien.

9    **C.    SALE OF THE REAL PROPERTY FREE AND CLEAR OF LIENS IS IN THE**

10   **BEST INTEREST OF CREDITORS OF THE ESTATE**

11   Sale of the Real Property pursuant to the terms of the

12   Agreement is in the best interest of creditors with claims

13   against the Estate for the following reasons:

14   1.    The Real Property is the primary asset of the Estate.

15   As a result, sale of the Real Property will minimize

16   administrative expenses to the Estate by resolving the Estate's

17   administration in a speedy and cost-efficient manner for the

18   benefit of secured lienholders and other creditors of the Estate.

19   2.    Sale of the Real Property will eliminate the risk and

20   uncertainty of future fluctuations in the real estate market.

21   **D.    NOTICE OF THE SALE IS ADEQUATE**

22   Trustee is serving notice of the sale on Debtors, Debtors'

23   counsel, the Office of the United States Trustee, all creditors,

24   and all other interested parties.

25   **E.    BUYER SHOULD BE DEEMED A "GOOD FAITH PURCHASER" PURSUANT TO**

26   **11 U.S.C. § 363(m)**

27   11 U.S.C. § 363(m) provides:

28   .  .  .  .  .

Adler/sale motion                    17.

> The reversal or modification on appeal of an
> authorization under subsection (b) or (c) of this
> section of a sale or lease of property does not affect
> the validity of a sale or lease under such
> authorization to an entity that purchased or leased
> such property in good faith, whether or not such entity
> knew of the pendency of the appeal, unless such
> authorization and such sale or lease were stayed
> pending appeal.

A good faith buyer "is one who buys 'in good faith' and 'for value.'" *Ewell v. Diebert (In re Ewell)*, 958 F.2d 276, 281 (9th Cir. 1992) (*citing In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)). "[L]ack of good faith is [typically] shown by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'" *Id.* (*quoting Community Thrift & Loan v. Suchy (In re Suchy)*, 786 F.2d 900, 902 (9th Cir. 1985)).

In the instant case, Buyer is buying in good faith, and has not colluded with the Trustee. The anticipated sale of the Real Property has been negotiated with Buyer in "arm's-length" discussions. Moreover, Trustee is informed and believes that Estate Broker actively marketed the Real Property through commercially reasonable means of selling residential real property including the MLS listing, the Internet Sites, and multiple showings of the Real Property to real estate agents and potential buyers. Estate Broker received and presented seven (7) written offers to Trustee. The Agreement is the highest and best offer Trustee has received and that has not been withdrawan as of the date of the Motion. Based on such facts and circumstances, Trustee believes that this Court can properly determine that Buyer is a "good faith purchaser" pursuant to 11 U.S.C. § 363(m).

**F.    THE BROKER COMMISSION SHOULD BE APPROVED**

Real estate brokers are "professionals" for purposes of §327 of the Bankruptcy Code and, as such, their employment must be approved by the court.  *In re Cummins*, 15 B.R. 893, 895 (BAP 9th Cir. 1981).  The Court entered the Employment Order approving the Broker Commission of six percent (6%) of the Sales Price. Trustee seeks the Court's approval of the Broker Commission in the reduced amount of $33,950.00.  the Broker Commission is to be divided with $9,700.00 to be paid to Estate Broker and $24,250.00 to be paid to Buyer Broker.

As previously discussed, the sale is fair and reasonable and in the best interest of the Estate.  Therefore, the reduced Broker Commission should be approved by the Court.

**G.    TRUSTEE MAY SELL PROPERTY OF THE ESTATE WITHOUT OVERBID**

Other courts have held that overbids are not required with respect to bankruptcy sales. See e.g., In re Bakalis, 200 B.R. 525 (Bankr. E.D.N.Y. 1998); In re Blue Coal Corp., 168 B.R. 553 (Bankr. Pa. 1994); In re Blue Coal Corp., 67 B.R. 798 (Bankr. Pa. 1986); and In re Blue Coal Corp., 168 B.R. at 564, quoting 4B Collier on Bankruptcy.  In this Case, Trustee is not proposing an overbid procedure because Buyer increased the Sales Price in exchange for a closing date of February 28, 2017 and no requested overbid procedure by Trustee.

### III.    CONCLUSION

**WHEREFORE,** Trustee requests that the Court enter an order providing that:

A.    The Motion is approved in its entirety;

.  .  .  .  .

B.    Trustee is authorized to execute any and all documents, including, but not limited to, the Agreement, escrow instructions, and a quit claim deed on behalf of the Estate necessary to sell and transfer the Real Property to Buyer, free and clear of all liens and interests, for the Sales Price, and pursuant to the terms and conditions set forth in the Agreement;

C.    Trustee is authorized to pay the debt secured by the First TD in the amount of the First TD Payoff of $825,000.00 based on the First TD Demand to be submitted to Encore, the HOA Fees of approximately $8,375.00 but in the final amount in the HOA Demand submitted to Encore, the Property Taxes of approximately $1,382.20 but in the final amount based on the closing date the Sale Escrow, the Broker Commission of $33,950.00, the Other Closing Costs, the Z&H Advances, the Gardening and Pool Invoices, the Insurance Invoice, and the Estate Expenses;

D.    The Sale Proceeds are to be issued by Encore to Trustee for deposit in the Estate bank account;

E.    Trustee reserves all rights to object to the validity, scope and priority of all disputed liens, claims and/or interests;

F.    The FTB Tax Lien shall attach to the Estate Distribution in the same priority, validity, and scope as such lien currently exists against the Real Property subject to 11 U.S.C. §§507(a), 724(a) and (b), and 726(a)(4), but the Real Property will be sold free and clear of all liens including, but not limited to, the Chase TD that has been extinguished based on the Full Reconveyance, and the FTB Tax Lien;

1    G.    Buyer is entitled to the protections of § 363(m) of the

2  Bankruptcy Code;

3    H.    Notice of the Motion and of the sale is proper and

4  adequate;

5    I.    There shall be no liability to Trustee or her

6  professionals, in any capacity, by virtue of the consummation of

7  the sale or by virtue of the failure of such sale to consummate;

8    J.    The stay of the order approving this Motion imposed by

9  Federal Rule of Bankruptcy Procedure 6004(h) and any other

10  applicable bankruptcy rules is waived; and

11    K.    Such other and further relief as the Court may deem

12  just and appropriate.

13  DATED: January 19, 2017

14

15                                    Nancy Hoffmeier Zamora
16                                    Chapter 7 Trustee

17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF BEHNAZ TAVAKOLI

I, Behnaz Tavakoli, declare that:

1.    I am a duly licensed real estate professional employed by Rodeo Realty, Inc. ("Estate Broker"), the real estate broker employed by Chapter 7 Trustee Nancy Hoffmeier Zamora ("Trustee") in the above-entitled case (the "Case") of debtors Frank Adler and Lauren Adler ("Debtors").

2.    I have personal knowledge of the facts stated herein and if called as a witness, I could and would competently testify hereto.

3.    The capitalized terms used herein have the meanings ascribed to them in the Motion for Order Authorizing Trustee to Sell Real Property Free and Clear of Liens (the "Motion") and the Memorandum of Points and Authorities to which this declaration is attached unless otherwise defined.

4.    Pursuant to the Employment Order, Estate Broker was employed by Trustee to market and sell the Real Property.  I am the agent of Estate Broker primarily responsible for marketing and selling the Real Property.

5.    On or about June 1, 2016, I listed the Real Property in the MLS, a combined multiple listing service, and syndicated websites.  Debtors vacated the Real Property on or about June 1, 2016.  On behalf of Trustee, I arranged for cleaning, maintenance and repairs to be performed to prepare the Real Property for marketing.  Trustee's law firm, Z&H, advanced the funds to pay costs incurred for closing, maintenance, repairs, and utilities.

6.    Marketing efforts by Estate Broker include:

a.    Listing in the MLS and the Internet Sites;

b.    Hosting twenty-six (26) open houses;

c.    Conducting ten (10) individual showings of the Real

Property to real estate agents and prospective buyers;

and

d.    Responding to at least fifty (50) additional inquiries

from brokers and individuals.

7.    The marketing resulted in seven (7) written offers.  I presented all of the written offers to Trustee and communicated Trustee's counter-offers.  The offers ranged from $800,000.00 to $980,000.00.  The two (2) parties who submitted offers of $980,000.00 responded to counter-offers from Trustee and, subsequently, both parties withdrew their respective offers.

8.    The Agreement represents the highest and best offer for the Real Property that has not been withdrawn as of the date of this declaration.

9.    The Real Property continues to be listed on the MLS. The listing for the Real Property will be amended to include information concerning the Hearing.

10.    Based on my experience as a real estate agent, I believe that the Sales Price of $970,000.00 reflects the fair market value of the Real Property based on its present condition.

11.    I do not have any familiarity with Buyer.  I believe that Buyer is not associated in any way with Debtors, the Estate, Trustee, and Trustee's professionals in the Case.

12.    The Employment Order provides for the Broker Commission to be calculated based on six percent (6%) of the gross sales price for the Real Property.  Estate Broker and Buyer Broker both agreed to a reduced Broker Commission in the total amount of

$33,950.00 with $9,700.00 to be paid to Estate Broker and $24,250.00 to be paid to Buyer Broker.

    I declare under penalty of perjury that the foregoing is true and correct. Executed this 18th day of January, 2017, at Calabasas, California.

                            Behnaz Tavakoli

## DECLARATION OF NANCY HOFFMEIER ZAMORA

I, Nancy Hoffmeier Zamora, declare:

1.    I am the duly appointed, qualified and acting Chapter 7 Bankruptcy Trustee of the above-entitled case.  If called upon as a witness I could and would competently testify to the matters stated herein.

2.    All capitalized terms used in this declaration have the meanings ascribed to them in the foregoing Motion to Sell Real Property Free and Clear of Liens (the "Motion") and the Memorandum of Points and Authorities in support of the Motion unless otherwise defined herein.

3.    I reviewed the Court's docket and pleadings filed in the Case.  I reviewed the claims register and claims filed in the Case.

4.    On the Petition Date, Debtors filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code commencing the Case assigned case no. 1:16-10099-VK.

5.    The primary asset of the Estate is the Real Property. The Real Property was Debtors' residence on the Petition Date. The Debtors listed the Real Property in their schedule A.

6.    I reviewed the PTR.  As of the Petition Date, title to the Real Property was held jointly by Debtors.  According to the PTR, title to the Real Property is vested in:  "Frank Adler and Lauren Adler, husband and wife, as joint tenants" subject to the Case.  The Real Property is property of the Estate.

7.    Debtors claimed the Homestead Exemption in the amount of $100,000.00 in their amended schedule C.

Adler/sale motion                                  25.

8.    FTB and IRS, respectively, filed the Priority Tax Claims that are exceptions to Debtors' claimed Homestead Exemption pursuant to 11 U.S.C. §§522(c)(1), 523(a)(1)(A), and 507(a)(8).    Consequently, Debtors are not entitled to receipt of any otherwise exempt funds unless and until the nondischargeable Priority Tax Claims are paid.

9.    Debtors stipulated with me to a waiver of the Homestead Exemption to acknowledge that the nondischargeable Priority Tax Claims are to be paid from the Sale Proceeds.

10.    I will issue Estate distributions to IRS and FTB from the Sale Proceeds after payment of all administrative expenses of the Estate, subject to Court approval, including approved fees and expenses of the Estate's accountant and Trustee's expenses.

11    On June 1, 2016, the Court entered the Employment Order authorizing me to employ Estate Broker as real estate broker to market and sell the Real Property effective as of June 1, 2016 [docket no. 63].    Estate Broker listed and actively marketed the Real Property for sale.    Estate Broker informed me regarding all marketing activity related to the Real Property.    Estate Broker received and presented seven (7) written offers to me.    With the assistance of Estate Broker, I made counter-offers.    Thereafter, through Estate Broker, I negotiated the Agreement and opened the Sale Escrow with Buyer.    Buyer agreed to increase the Sales Price based on a closing date of no later than February 28, 2017 and my agreement not to include an overbid procedure in the Motion.

12.    The Employment Order provides for the Broker Commission to be calculated based on six percent (6%) of the gross sales price for the Real Property.    Estate Broker and Buyer Broker both

agreed to a lesser percentage.  Estate Broker agreed to accept

one percent (1%) of the Sales Price ($9,700.00) and Buyer Broker

agreed to accept two and one-half percent (2.5%) of the Sales

Price ($24,250.00).  The total Broker Commission requested for

the Court's approval is $33,950.00 based on the Sales Price of

$970,000.00.

13.  Estate Broker actively marketed the Real Property with

Debtors' cooperation.  Debtors vacated the Real Property on or

about June 1, 2016.  Behnaz Tavakoli, the primary agent of Estate

Broker responsible for marketing the Real Property, arranged for

cleaning, maintenance and repairs to be performed to prepare the

Real Property for Marketing.  My law firm, Z&H, advanced the

funds to pay costs incurred for closing, maintenance, repairs,

and utilities. Estate Broker conducted twenty-six (26) open

houses and ten (10) individual showings of the Real Property to

real estate agents and prospective buyers.  Estate Broker

responded to at least fifty (50) additional inquiries.  Estate

Broker listed the Real Property on the MLS and the Internet

Sites.

14.  I desire to maximize distributions to creditors of the

Estate by selling the Real Property free and clear of liens and

on an "AS-IS, WHERE-IS" basis to Buyer for the Sales Price of

$970,000.00 and pursuant to the other terms set forth in the

Agreement.

15.  The Sales Price offered by Buyer is the highest and

best offer that has been received, and not withdrawn, as of the

date of the Motion.  I received a total of seven (7) written

offers ranging from $800,000.00 to $980,000.00.  The two (2)

potential buyers who offered $980,000 negotiated counter-offers with me and then both withdrew their offers. I believe the Sales Price represents the fair market value for the Real Property considering current market conditions and the marketing efforts of Estate Broker, including listing of the Real Property on the MLS and the Internet Sites, and multiple showings of the Real Property to real estate agents and potential buyers.

16. I have no relationship to or with Buyer and am not related to Buyer in any manner. I reviewed Debtors' schedules and the claims register and claims filed in the Case. Based on this review, I determined that Buyer is not a creditor of the Estate. I believe that Buyer is a good faith purchaser. Buyer and I negotiated at "arms-length."

17. Estate Broker provided me with information necessary to satisfy me that the immediate sale of the Real Property to Buyer is in the best interest of the Estate.

18. Encore prepared the Estimated Closing Statement to assist me with analysis of the amounts to be paid through the Sale Escrow from the Sales Price.

19. As described herein and in the exhibits attached to the this Declaration, the Sales Price ($970,000.00) will provide payment as follows:

a. the debt secured by the First TD recorded against the Real Property for the benefit of First TD Holder in the amount of $825,000.00 agreed to by First TD Holder and as will be stated in the First TD Demand to be submitted to Encore;

. . . . .

Adler/sale motion                    28.

b.   the HOA Fees estimated at $8,375.00 but in the final amount in the HOA Demand submitted to Encore;

c.   the Property Taxes estimated at $1,382.20;

d.   the Broker Commission in the reduced amount of $33,950.00;

e.   the Other Closing Costs estimated at $6,000.00;

f.   the Z&H Advances of approximately $10,000.00;

g.   the Gardening and Pool Invoices of $2,090.00;

h.   the Insurance Invoice of $5,489.10;

i.   the Estate Expenses of approximately $7,000.00; and

j.   the Sale Proceeds to the Estate for distribution to IRS and FTB for the nondischargeable Priority Tax Claims.

20.   The Sales Price of $970,000.00 provides the payments described above (approximately $900,000.00) and the Sale Proceeds to me for distributions to pay the nondischargeable Priority Tax Claims owed to IRS and FTB (approximately $70,000.00).

21.   The Motion seeks approval and authorization for me to execute any and all documents necessary to transfer the Real Property from the Estate to Buyer, and to pay the debt secured by the First TD, the HOA Fees, the Property Taxes, the Broker Commission, the Other Closing Costs, the Z&H Advances, the Gardening and Pool Invoices, the Insurance Invoice, the Estate Expenses, and the disbursement of the Sale Proceeds to me for distributions to FTB and IRS for nondischargeable Priority Tax Claims.

22.   I seek the Court's approval to sell the Real Property free and clear of liens and on an "AS-IS, WHERE-IS" basis to

.   .   .   .   .

Buyer for the Sales Price of $970,000.00, and pursuant to the

other terms and conditions set forth in the Agreement.

23.   The Claims Bar Date in the Case was June 7, 2016.  I

reviewed the claims register and claims filed in the Case.

According to the claims register in the Case, the total balance

of allowed, priority, unsecured claims filed in the Case as of

the date of this Motion is $113,415.48 for nondischargeable

taxes.

24.   I reviewed the PTR, the motion for relief from stay

filed by counsel for the First TD Holder as docket no. 77 in the

Case, the HOA Claim, the Full Reconveyance, and other documents

that affect the Real Property.

25.   I negotiated the First TD Payoff of $825,000.00 with

counsel for the First TD Holder.

26.   A true and correct copy of the Agreement is attached as

Exhibit A to this declaration and incorporated herein by

reference.

27.   True and correct copies of the HOA Claim, the Gardening

and Pool Invoices, the Insurance Invoice, the Z&H Invoice, and

the Current Trustee Expense Invoice are attached as Exhibit B to

this declaration and incorporated herein by reference.

28.   A true and correct copy of the PTR is attached as

Exhibit C to this declaration and incorporated herein by

reference.

29.   A true and correct copy of the Estimated Closing

Statement is attached as Exhibit D to this declaration and

incorporated herein by reference.

. . . . .

Adler/sale motion                     30.

30.   True and correct copies of the Priority Tax Claims are attached as _Exhibit E_ to this declaration and incorporated herein by reference.

31.   A true and correct conformed copy of the recorded Full Reconveyance is attached as _Exhibit F_ to this declaration and incorporated herein by reference.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 19th day of January, 2017, at Los Angeles, California.

_____
NANCY HOFFMEIER ZAMORA