# EXHIBIT  A

## PURCHASE AND SALE AGREEMENT AND ESCROW INSTRUCTIONS
### (RESIDENTIAL PROPERTY)

This purchase and sale agreement and escrow instructions (the "Agreement") is entered into as of December 20, 2016 (the "Execution Date") by and between Megan Nelson ("Buyer") and Nancy Hoffmeier Zamora ("Trustee") in her capacity as chapter 7 trustee for the bankruptcy estate (the "Estate") of Frank Adler and Lauren Adler. Together, Buyer and Trustee hereinafter shall be referred to as the "Parties."

### RECITALS

A.    That certain residential real property (the "Real Property") commonly known as 1028 Lambourne Place, Oak Park, California 91377-5809 and identified as Venture County Assessor's Parcel No.8010268085 is an asset of the Estate.

B.    Trustee is the duly appointed chapter 7 trustee for the Estate.

C.    Subject to approval by the United States Bankruptcy Court (the "Bankruptcy Court"), Section 363(f) of the United States Bankruptcy Code authorizes Trustee to sell the Real Property free and clear of any interests and liens pursuant to the Agreement.

D.    Article 1.5 ("Article 1.5") of the California Civil Code ("Civil Code") requires disclosures by sellers upon the transfer of residential real property (Civil Code section 1102 et seq.). Civil Code section 1102.2 of the Civil Code exempts Trustee from the provisions of Article 1.5.

### AGREEMENT

In consideration of the mutual covenants and agreements reflected herein, and for other good and valuable consideration, receipt of which is hereby acknowledged, the Parties to this Agreement agree as follows:

1.    **Purchase of the Real Property.** Buyer shall purchase the Real Property from the Estate for a total sales price of $960,000.00 (the "Purchase Price") payable in cash upon Close of Escrow (as defined below in Paragraph 6).

2.    **Purchase of Personal Property.** The Purchase Price shall include Buyer's purchase of all existing fixtures and fittings (the "Personal Property") attached to the Real Property free and clear of liens and without Trustee's warranty. Buyer acknowledges that prior and current occupants of the Real Property may have caused waste to the Real Property by, among other things, removing various fixtures and fittings from the Real Property.

3.    **As-Is; Where-Is.** Buyer agrees to purchase the Real Property and the Personal Property on an "as-is, where-is" basis. Buyer acknowledges that Trustee made no investigation of nor makes any representation or warranty regarding the condition of the Real Property or the Personal Property.

4.    **Earnest Money Deposit.**

a.    **Escrow Account.** Buyer shall deposit $30,000.00 (the "Earnest Money") with Escrow Holder (as defined below in Paragraph 6) on or before December 21, 2016. The Earnest Money shall be in the form of a cashier's check or wire transfer made payable to Escrow Holder. Escrow Holder shall apply the Earnest Money to the Purchase Price upon Close of Escrow.

b.    **Refund of the Earnest Money.** Trustee shall authorize Escrow Holder to refund the Earnest Money to Buyer if the Parties cancel Escrow pursuant to Paragraph(s) 5, 8, 9, 15 and/or 16 (as provided below in Paragraph 6(g)(2)).

· · · · ·
· · · · ·

A:Sell\Final Nelson.001



Trustee                Buyer
Page 1 of 9



INITIAL
HERE

c.    Surrender of the Earnest Money.  As provided below in Paragraph 17, Buyer shall surrender the Earnest Money to Trustee as liquidated damages if the Bankruptcy Court approves Buyer's purchase of the Real Property, then Buyer defaults under this Agreement.

5.    Motion for Order Approving Sale of Real Property.

a.    Buyer Acknowledgment.  Buyer acknowledges that sale of the Real Property pursuant to this Agreement is subject to prior approval by the Bankruptcy Court.  As such, the Bankruptcy Court's approval of this Agreement is a contingency of sale.

b.    Sale Motion and Hearing.

(1)    Motion.  After the Parties execute this Agreement, Trustee shall file with the Bankruptcy Court a motion (the "Sale Motion") for order approving sale of the Real Property free and clear of any interests and liens, subject to overbid, and a notice of hearing (the "Overbid Hearing") on the Sale Motion.  Trustee shall attach this Agreement as an exhibit to the Sale Motion.

(2)    Order.  At the conclusion of the Overbid Hearing, Trustee shall lodge a proposed order with the Court approving sale of the Real Property to Buyer pursuant to this Agreement or to the highest bidder approved by the Bankruptcy Court at the Overbid Hearing.  Upon the Bankruptcy Court's entry of the order approving Trustee's sale of the Real Property to Buyer (as the highest bidder) pursuant to this Agreement (the "Sale Order"), Trustee shall deposit a certified copy of the Sale Order into Escrow.

(3)    Buyer Not Approved.  If the Bankruptcy Court does not approve Buyer to purchase the Real Property, the Parties shall cancel Escrow and Trustee shall authorize Escrow Holder to refund the Earnest Money to Buyer.

6.    Escrow.

a.    Opening Escrow.  This sale shall be consummated through an escrow ("Escrow") established with Encore Escrow ("Escrow Holder"), located at 23901 Calabasas Road, #1033 , Calabasas, California, 91302.  On December 20, 2016, the Parties shall deposit this Agreement with Escrow Holder, which deposit shall open Escrow for sale of the Real Property.

b.    Earnest Money.  Upon receipt of the Earnest Money, Escrow Holder shall deposit the Earnest Money into an escrow account established exclusively for the purpose of selling the Real Property.

c.    Joint Escrow Instructions to Escrow Holder.  The applicable portions of this Agreement shall constitute joint escrow instructions (the "Joint Escrow Instructions") of Trustee and Buyer to Escrow Holder.

d.    Supplemental Escrow Instructions.  The Joint Escrow Instructions may be modified and/or supplemented pursuant to addenda executed by the Parties.  Trustee and Buyer acknowledge that Escrow Holder will ask the Parties to execute general escrow provisions (the "Supplemental Escrow Instructions") that control the duties and obligations of Escrow Holder only.  To the extent the Supplemental Escrow Instructions conflict with this Agreement or the Joint Escrow Instructions, this Agreement and the Joint Escrow Instructions, not the Supplemental Escrow Instructions, shall control the rights, duties, and obligations of the Parties.

e.    Closing Date.  Close of Escrow shall occur on the first business day that is at least fifteen (15) days after entry of the Sale Order (the "Closing Date").  The Parties can accelerate or extend the Closing Date by executing an amendment to this Agreement that provides for an earlier or later Closing Date that is consistent with the Sale Order.

f.    Close of Escrow.  "Close of Escrow" shall occur when Escrow Holder records the Quitclaim Deed (as defined below in Paragraph 16) transferring fee title to the Real Property from the Estate to Buyer.

ActiveNaid Notion.001                                    2.





g.    Cancellation of Escrow.

(1)    Buyer Default.  If Close of Escrow does not occur by the Closing Date because Buyer defaults on Buyer's obligations pursuant to this Agreement, Buyer agrees to forfeit the Earnest Money to Trustee and the Estate as provided below in Paragraph 17.

(2)    Cancellation Pursuant to Contingency.  If Buyer cancels Escrow pursuant to Paragraph(s) 6, 8, 9, 15 and/or 16 of this Agreement, the Parties shall cancel Escrow and Trustee shall authorize Escrow Holder to refund the Earnest Money to Buyer.

(3)    No Prejudice.  Cancellation of Escrow as provided herein shall be without prejudice to whatever legal rights Trustee and Buyer may have against each other.

h.    Preliminary Closing Statements.  No less than five (5) business days prior to Close of Escrow, Escrow Holder shall provide Trustee with preliminary closing statements (the "Preliminary Closing Statements") for both Trustee as seller of the Real Property and Buyer as purchaser of the Real Property.

i.    Closing Documents.  No less than five (5) business days prior to Close of Escrow, Escrow Holder shall provide the Parties with any and all documents that the Parties must execute and deposit with Escrow Holder prior to Close of Escrow.

7.    Balance of Purchase Price.  Buyer shall deposit the balance of the Purchase Price (the "Purchase Price Balance"), i.e., $930,000.00, into Escrow in the form of cash or by wire transfer at least one (1) business day before the Closing Date or by cashier's check during business hours at least two (2) business days before the Closing Date.  After paying all approved costs and liens, Escrow Holder shall pay the net proceeds from the Purchase Price Balance to Trustee by check made payable to "Nancy Hoffmeier Zamora, Chapter 7 Trustee, Adler Estate."

8.    Inspection Contingency.  Buyer may cancel Escrow on or before January 6, 2017 (the "Contingency Deadline") based on Buyer's inspection of the Real Property.  Buyer shall notify Trustee in writing that Buyer is canceling Escrow based on Buyer's inspection of the Real Property and Buyer's ability to obtain a homeowner's insurance policy for the Real Property.  If Buyer cancels Escrow pursuant to this inspection contingency, the Parties shall cancel Escrow and Trustee shall authorize Escrow Holder to refund the Earnest Money to Buyer.

9.    Loan Contingency.

a.    Buyer Representation.  Buyer represents that Buyer has obtained preliminary approval for financing sufficient to close Escrow by the Closing Date.  Buyer agrees to pursue financing sufficient to pay the Purchase Price Balance and any additional closing costs.

b.    Trustee Acknowledgment.  Trustee acknowledges that Buyer will require financing to purchase the Real Property and that Buyer's financing is a contingency of this Agreement.

c.    Buyer Acknowledgment.  Buyer acknowledges that, in evaluating competing bids at the Overbid Hearing, Trustee will prefer an all cash offer for the Real Property without a financing contingency, all other terms and bidder qualifications being equal.  Buyer agrees to remove the financing contingency prior to the Overbid Hearing.

d.    Close of Escrow.  Buyer agrees to deposit funds equal to the Purchase Price Balance and Buyer's closing costs by the Closing Date as provided in Paragraph 7.

10.    Closing and Possession.

a.    Delivery.  Trustee shall deliver possession and occupancy of the Real Property to Buyer on the Closing Date.

. . . . .
. . . . .
. . . . .

3.    



034

     b.    **Assignable Warranty Rights.** Upon Close of Escrow, to the extent permitted by law and/or contract, Trustee shall hereby assign warranty rights, if any, for the Personal Property.

     c.    **Access.** Upon Close of Escrow, Trustee shall provide Buyer all keys and or means to operate all locks, mailboxes, security systems, alarms, and garage door openers that are in Trustee's possession or control, if any.

    11.   **Reports and Disclosures.**

     a.    **Pest Control.** Trustee shall not pay for or provide Buyer with a pest control report for the Real Property as a condition of sale. Trustee has made no investigation of and makes no representation or warranty regarding the physical condition of the Real Property. Buyer acknowledges that sale of the Real Property is on an "as-is, where-is" basis.

     b.    **Natural Hazard Zone Disclosure Report.** Buyer acknowledges that Civil Code section 1103.2(a)(1) specifically exempts transfers of real property by a trustee in bankruptcy. Accordingly, Buyer acknowledges that Trustee shall not pay for or otherwise provide a natural hazard zone disclosure report (the "NHZD Report") for Buyer's review prior to Close of Escrow. If Buyer and/or Title Company (as defined below in Paragraph 15) require a NHZD Report in order to close Escrow, Buyer shall pay for the NHZD Report. Trustee has made no investigation of and makes no representation or warranty regarding the physical condition of the Real Property or the location of the Real Property. Buyer acknowledges that sale of the Real Property is on an "as-is, where-is" basis.

     c.    **Data Base Disclosure Addendum (Megan's Law).** Buyer acknowledges that Civil Code section 2079.10a (referring to Civil Code section 1102) specifically exempts transfers of real property by a trustee in bankruptcy from the requirements of 2079.10e, commonly referred to as "Megan's Law." Accordingly, Buyer acknowledges that Trustee will not execute a "Data Base Disclosure Addendum (Megan's Law)" as a condition for closing Escrow. Trustee has made no investigation of and makes no representation or warranty regarding the existence or non-existence of convicted sex offenders or other criminals in the neighborhood surrounding the Real Property. Buyer acknowledges that sale of the Real Property is on an "as-is, where-is" basis.

     d.    **Real Estate Transfer Disclosure Statement.** Buyer acknowledges that Civil Code section 1102 specifically exempts from the provisions of Article 1.5 transfers of real property by a trustee in bankruptcy. Buyer acknowledges that Article 1.5 requires, among other things, disclosures by sellers upon the sale of residential real property. Accordingly, Buyer acknowledges that Trustee will not provide Buyer with a Real Estate Transfer Disclosure Statement or addenda thereto. Trustee has made no investigation and makes no representation or warranty regarding the Real Property, the neighborhood surrounding the Real Property, or the general location of the Real Property. Buyer acknowledges that sale of the Real Property is on an "as-is, where-is" basis.

     e.    **Mello-Roos Community Facilities Act.** Trustee has made no investigation and makes no representation or warranty regarding any special taxes assessed against the Real Property by a local agency pursuant to the Mello-Roos Community Facilities Act ("Mello-Roos").

    12.   **Prorations of Property Taxes and Other Items.**

     a.    **Buyer and Trustee.** The following items shall be paid current and prorated between Buyer and Trustee as of Close of Escrow:

       (1)   real property taxes and assessments;

       (2)   interest;

       (3)   rents;

       (4)   municipal utilities;

4.



(5) payments on bonds and assessments assumed by Buyer, if any;

(6) payments on Mello-Roos and other special assessment district bonds and assessments, if any, which are now a lien; and

(7) any and all other items identified by Escrow Holder in the Preliminary Closing Statements and approved by the Parties prior to Close of Escrow.

b. **Buyer.** Buyer shall be responsible for prorated payments on Mello-Roos and other special assessment district bonds and assessments that are now a lien but not yet due.

c. **Supplemental Tax Bills.** For periods after Close of Escrow, Buyer shall be responsible for any and all supplemental taxes assessed against the Real Property. For periods prior to Close of Escrow, Trustee shall be responsible for any and all supplemental taxes assessed against the Real Property.

13. **Additional Buyer Costs.** In addition to costs allocated to Buyer by other provisions of this Agreement, Buyer shall pay for the cost of:

a. smoke detector installation, carbon monoxide detector installation and/or water heater bracing, if required by law;

b. compliance with any other minimum mandatory government retrofit standards, inspections and reports if required as a condition of closing Escrow under any law;

c. Buyer's portion of the escrow fees ("Escrow Fees") charged by Escrow Holder;

d. homeowner's warranty policy; and

e. the NHZD Report.

14. **Additional Trustee Costs.** Trustee shall pay for the cost of the following:

a. county transfer tax or transfer fee;

b. city transfer tax or transfer fee;

c. Trustee's portion of the Escrow Fees;

d. title insurance policy;

e. Home Owner Association transfer fee and document preparation fees, if any.

15. **Title and Vesting.**

a. **Preliminary Title Report.** By 5:00 p.m. on December 20, 2016, Trustee will procure and deposit with Escrow Holder a preliminary title report ("PTR") issued by Fidelity National Title Company ("Title Company"). Escrow Holder, upon receipt of PTR, shall provide PTR to Buyer for review and approval. Buyer shall have until 5:00 p.m. on the Contingency Deadline to notify Trustee, in writing, of Buyer's disapproval of any exception in the PTR. If Buyer fails to disapprove any exceptions in the PTR by 5:00 p.m. on the Contingency Deadline, Buyer shall be deemed to have waived any and all objections to the PTR. If Buyer timely notifies Trustee of Buyer's disapproval and Trustee is unwilling or unable to cure or otherwise address the exception to Buyer's satisfaction, not to be unreasonably withheld, then the Parties shall cancel Escrow and Trustee shall authorize Escrow Holder to refund the Earnest Money to Buyer.

b. **Quitclaim Deed.** At Close of Escrow, Buyer shall receive a quitclaim deed (the "Quitclaim Deed") transferring title ("Title") to the Real Property from the Estate to Buyer. Unless otherwise designated in Buyer's escrow instructions, title shall vest as follows: Megan Nelson. Title shall include oil, mineral and water rights, if any, appurtenant to the Real Property.

Adler/Nell Nelson.001                    5.



Title shall be subject to all encumbrances, easements, covenants, conditions, restrictions, rights and other matters which are of record or are disclosed to Buyer prior to Close of Escrow.

        c.    **Title Insurance.** Trustee shall procure from Title Company a California Land Title Association ("CLTA") standard policy of title insurance in the amount of the Purchase Price to be approved by Buyer, showing title vested in Buyer, as stated above, with only those exceptions to title approved by Buyer on the PTR produced by the Title Company.

        d.    **Real Property Insurance.** Trustee's hazard and casualty insurance on the Real Property shall be canceled as of the Closing Date, and Buyer shall be responsible for obtaining insurance coverage as of the Closing Date.

16.    **Contingency and Cancellation Rights.** If Buyer removes any contingency or cancellation right as provided herein, Buyer shall conclusively be deemed to have:

        a.    completed all inspections, investigations, and review of reports and other applicable information and disclosures pertaining to that contingency or cancellation right;

        b.    elected to proceed with purchasing the Real Property pursuant to this Agreement; and

        c.    assumed all liability, responsibility, and expense for repairs or corrections pertaining to that contingency or cancellation right.

17.    **LIQUIDATED DAMAGES.** If Buyer fails to complete the purchase contemplated by this Agreement because of Buyer's default, Trustee shall retain the Earnest Money as liquidated damages and shall be released from any further obligation to sell the Real Property to Buyer. Escrow Holder shall release the Earnest Money to Trustee upon receiving Trustee's written notification that Buyer has defaulted under the terms of this Agreement.

Buyer's Initials _____  Trustee's Initials _____

18.    **Additional Obligations.**

        a.    **Withholding Taxes.** Trustee and Buyer agree to execute and deliver any instrument, affidavit, statement, or instruction reasonably necessary to comply with federal and state tax withholding laws.

        b.    **Additional Documents.** Trustee and Buyer agree to take such further action and execute all such further documents as may be necessary or appropriate in order to consummate this Agreement.

19.    **Broker Compensation.**

        a.    **Broker's Fee.** Subject to approval by the Bankruptcy Court and the Lender's consent and approval, in consideration of real estate brokerage services rendered, Trustee agrees to pay Rodeo Realty, Inc. ("Estate Broker") and Real Living Pacific Realty ("Buyer Broker") upon Close of Escrow, a total real estate brokerage fee equal to three and one-half percent (3.5%) of the Purchase Price to be divided one percent (1%) to Estate Broker and two and one-half percent (2.5%) to Buyer Broker.

        b.    **Failure to Close Escrow.** No commission or other fee shall be payable to Estate Broker or Buyer Broker if Escrow fails to close. Trustee and Buyer acknowledge that no other broker's commission or finder's fee is payable with regard to this transaction.

        c.    **Indemnification.** Trustee and Buyer each ("Indemnitor") agrees to indemnify and hold the other harmless from and against all liability, claims, demands, damages, or costs of any kind arising from or connected with any broker's or finder's fee or commission or charge

AcSer/final Hutson.001

6.

Trustee _____ Buyer _____
Page 6 of 9

INITIAL HERE

claimed to be due any person arising from Indemnitor's conduct with respect to this transaction, other than the commissions authorized in this paragraph.

20.    **Miscellaneous.**

a.    **Disputes.** The Bankruptcy Court shall have sole and exclusive jurisdiction over any dispute between the Parties over the terms of this Agreement and over any transaction or event referenced or contemplated by this Agreement.

b.    **Bankruptcy Court Jurisdiction.** The Bankruptcy Court shall have continuing jurisdiction to interpret and enforce this Agreement.

c.    **Attorneys' Fees.** The prevailing party in any dispute arising out of this Agreement shall be entitled to recover as an element of its costs of suit, and not as damages, reasonable attorneys' fees and costs to be fixed by the Bankruptcy Court. The "prevailing party" shall be the party who is entitled to recover its costs of suit, whether or not said suit proceeds to final judgment. A party not entitled to recover its costs shall not recover attorneys' fees. No sum for attorneys' fees shall be included in calculating the amount of a judgment for purposes of deciding whether a party is entitled to its costs or attorneys' fees.

d.    **Time of the Essence.** Time is of the essence of each provision of this Agreement in which time is an element. Unless the context otherwise requires, all periods terminating on a given day, period of days, or date, shall terminate at 5:00 p.m., Pacific Daylight Savings Time, on that day or date, and reference to "days" shall refer to calendar days.

e.    **Amendment and Waiver.** Neither this Agreement, nor any of the provisions hereof, may be changed, waived, discharged or terminated, except by an instrument in writing signed by the party against whom enforcement of the change, waiver, discharge or termination is sought.

f.    **Successors and Assigns.** This Agreement shall be binding upon, and inure to the benefit of, the Parties hereto and their respective successors and assigns.

g.    **Headings.** Paragraph headings contained in this Agreement are for reference purposes only, and shall not affect in any way the meaning or interpretation of this Agreement.

h.    **Third Party Rights.** Except with respect to the releases provided for above, no rights are intended to be created in any person not a party to this Agreement.

i.    **Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together constitute one and the same instrument.

j.    **Entire Agreement.** This Agreement sets forth the entire agreement among the Parties and fully supersedes any and all prior agreements or understandings between the Parties pertaining to the subject matter of this Agreement.

k.    **Understanding of the Parties.** The Parties have each read this Agreement carefully, and the contents hereof are known and understood by all, and the Agreement is signed freely by each person executing this Agreement. Prior to the execution of this Agreement by the Parties, and each of them, each of the Parties hereto has had the opportunity to receive independent legal advice by attorneys of his or her choice with respect to the advisability of executing this Agreement.

l.    **No Statements, Representations, and/or Reliance.** Except as expressly stated in this Agreement, neither of the Parties hereto has made any statement or representation to any other party regarding any fact relied upon by such other party entering into this Agreement, and each of the Parties specifically does not rely upon any statement, representation or promise of any other party in executing this Agreement, except as expressly stated in this Agreement.

Admitted Nelson.001

7.

038

m.   Construing the Agreement.  This Agreement shall be construed without regard as to which party drafted the Agreement, and this Agreement shall be construed as if the Parties hereto participated equally in the drafting of the Agreement.

n.   Applicable Law.  This Agreement shall be construed in accordance with, and governed by, the laws of the State of California and applicable federal law.

o.   Severability.  Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be valid under applicable law, but if any provision of this Agreement shall be invalid, or prohibited thereunder, such provision shall be ineffective to the extent of such prohibition without invalidating the remainder of such provision or the remaining provisions of this Agreement.

p.   Recitals.  The recitals at the beginning of this Agreement are incorporated herein by this reference.

q.   Terms.  Whenever the singular number is used in this Agreement, and when required by the context, the same shall include the plural, and the masculine, and feminine and neuter genders shall each include the others.

r.   Representations and Warranties.  All representations and warranties contained herein shall survive the execution and delivery of this Agreement. All obligations of the Parties to this Agreement which have not been fully performed, paid and satisfied as of the Execution Date, shall survive the execution and delivery of this Agreement.

## SIGNATURES OF THE PARTIES

### OFFER

As of the Execution Date, the undersigned offers and agrees to buy the Real Property on the terms and conditions stated in this Agreement and acknowledges receiving a copy of this Agreement.

BUYER:

_____
Megan Nelsen

### ACCEPTANCE

As of the Execution Date, Trustee accepts the foregoing offer to purchase the Real Property and agrees to sell the Real Property to Buyer on the terms and conditions specified in this Agreement. Trustee acknowledges receipt of a copy of this Agreement and authorizes Estate Broker to deliver a signed copy to Buyer.

ESTATE:

By: _____
Nancy Hoffmeier Zamora, Esq., Trustee
Chapter 7 Estate of Frank Adler and Lauren Adler
In re Frank Adler and Lauren Adler
Case No. 1:16-bk-10099-VK

Adlerfinal Nelsen.001

8.

Trustee   Buyer
Page 8 of 9

039

## SIGNATURES OF THE BROKERS

**BROKERS' CONSENT**

Estate Broker and Buyer Broker consent to the commission provision in Paragraph 19 above. By signing below, Estate Broker and Buyer Broker acknowledge that any and all disputes arising under this Agreement or related to the sale of the Real Property are subject to the jurisdiction of the Bankruptcy Court. The signing of this paragraph shall not result in Estate Broker and Buyer Broker being deemed parties to this Agreement.

**ESTATE BROKER:**

Behnaz Tavakoli, Real Estate Agent
Rodeo Realty, Inc.

**BUYER BROKER:**

_hilary koch_    12/20/2016

Hilary Koch, Real Estate Agent
Real Living Pacific Realty

Additional History.001                    9.                    Page 9 of 9

INITIAL
HERE

DocuSign Envelope ID: 7EAA74D2-F8E3-46BD-9980-51D182B1EE63

# CALIFORNIA ASSOCIATION OF REALTORS®

## ADDENDUM

(C.A.R. Form ADM, Revised 12/15)

No. **1**

The following terms and conditions are hereby incorporated in and made a part of the: ☒ Purchase Agreement, ☐ Residential Lease or Month-to-Month Rental Agreement, ☐ Transfer Disclosure Statement (Note: An amendment to the TDS may give the Buyer a right to rescind), ☐ Other _____,
dated __December 20, 2016__ , on property known as _____1028 Lambourne Place_____
_____Oak Park, California 91377_____
in which _____Megan Nelson, Matthew Michael Edward Nelson_____ is referred to as ("Buyer/Tenant")
and _____ is referred to as ("Seller/Landlord").

**purchase price to be increased to $970,000**
**COE to be on or before 2/28/2017**
**Overbid shall be deleted from contract**

The foregoing terms and conditions are hereby agreed to, and the undersigned acknowledge receipt of a copy of this document.

Date __January 6, 2017__

Buyer/Tenant _____
Megan Nelson

Buyer/Tenant _____
Matthew Michael Edward Nelson

Date __January 6, 2017__

Seller/Landlord _____
Nancy Aurora Chester, Trustee

Seller/Landlord _____

© 1986-2015, California Association of REALTORS®, Inc. United States copyright law (Title 17 U.S. Code) forbids the unauthorized distribution, display and reproduction of this form, or any portion thereof, by photocopy machine or any other means, including facsimile or computerized formats.
THIS FORM HAS BEEN APPROVED BY THE CALIFORNIA ASSOCIATION OF REALTORS® (C.A.R.). NO REPRESENTATION IS MADE AS TO THE LEGAL VALIDITY OR ACCURACY OF ANY PROVISION IN ANY SPECIFIC TRANSACTION. A REAL ESTATE BROKER IS THE PERSON QUALIFIED TO ADVISE ON REAL ESTATE TRANSACTIONS. IF YOU DESIRE LEGAL OR TAX ADVICE, CONSULT AN APPROPRIATE PROFESSIONAL.
This form is made available to real estate professionals through an agreement with or purchase from the California Association of REALTORS®. It is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark which may be used only by members of the NATIONAL ASSOCIATION OF REALTORS® who subscribe to its Code of Ethics.

Published and Distributed by:
REAL ESTATE BUSINESS SERVICES, INC.
a subsidiary of the California Association of REALTORS®
525 South Virgil Avenue, Los Angeles, California 90020

Reviewed by _____ Date _____

**ADM REVISED 12/15 (PAGE 1 OF 1)**

**ADDENDUM (ADM PAGE 1 OF 1)**

041

# EXHIBIT  B

**Fill in this information to identify the case:**

| | |
|---|---|
| Debtor 1 | Frank Adler |
| Debtor 2 (Spouse, if filing) | Lauren Adler |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 1:16-10099-VK |

## Official Form 410

# Proof of Claim

4/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

### Part 1:    Identify the Claim

**1. Who is the current creditor?**

Regency Hills Neighborhood HOA
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

C/O Ross Morgan & Co
Name

15315 Magnolia Blvd Ste 212
Number    Street

Sherman Oaks    CA    91403
City    State    ZIP Code

Contact phone 818-907-6622

Contact email Josh@rossmorganco.com

Where should payments to the creditor be sent? (if different)

Name _____

Number    Street _____

City    State    ZIP Code _____

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____    Filed on _____ MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

**Part 2:  Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**
☐ No
☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  1  0  1  4

**7. How much is the claim?**  $_____5,493.34 . Does this amount include interest or other charges?
☐ No
☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Homeowners Association Assessments

**9. Is all or part of the claim secured?**
☐ No
☑ Yes. The claim is secured by a lien on property.

Nature of property:
☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*
☐ Motor vehicle
☐ Other. Describe:   1028 Lambourne Place Oak Park CA 91377

Basis for perfection:   Lien
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:  $  1,200,000.00
Amount of the claim that is secured:  $  5,493.34
Amount of the claim that is unsecured:  $  0.00  (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:  $  5,493.34

Annual Interest Rate (when case was filed) 12.00 %
☑ Fixed
☐ Variable

**10. Is this claim based on a lease?**
☑ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.  $_____

**11. Is this claim subject to a right of setoff?**
☑ No
☐ Yes. Identify the property: _____

12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☑ No

☐ Yes. Check all that apply:

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $_____

☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $_____

☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $_____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $_____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $_____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies.    $_____

\* Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   04/28/2016
                   MM / DD / YYYY

Signature

Print the name of the person who is completing and signing this claim:

| | |
|---|---|
| Name | Neil B. Katz |
| | First name    Middle name    Last name |
| Title | Attorney for Claimaint |
| Company | Robillard & Katz |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 1661 240th Street |
| | Number    Street |
| | Harbor City    CA    90710 |
| | City    State    ZIP Code |
| Contact phone | 310-408-2886    Email NeilKatz56@gmail.com |

045

# Mortgage Proof of Claim Attachment

(12/15)

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.

**Part 1: Mortgage and Case Information**

Case number: 1:16-10099-VK
Debtor 1: Frank Adler
Debtor 2: Lauren Adler
Last 4 digits to identify: 1014
Creditor: Regency Hills Neighborhood
Servicer: HOA
Fixed accrual/daily simple interest/other: 12%

**Part 2: Total Debt Calculation**

Principal balance: 3,383.73
Interest due: 424.11
Fees, costs due: 1,685.50
Escrow deficiency for funds advanced: Ø
Less total funds on hand: – Ø
Total debt: 5,493.34

**Part 3: Arrearage as of Date of the Petition**

Principal & interest due: 3,383.73
Prepetition fees due: 2,109.61
Escrow deficiency for funds advanced: Ø
Projected escrow shortage: Ø
Less funds on hand: – Ø
Total prepetition arrearage: 5,493.34

**Part 4: Monthly Mortgage Payment**

Principal & interest: 122
Monthly escrow: Ø
Private mortgage insurance: Ø
Total monthly payment: 122

**Part 5: Loan Payment History from First Date of Default**

| Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. Date | B. Contractual payment amount | C. Funds received | D. Amount incurred | E. Description | F. Contractual due date | G. Prin, int & esc past due balance | H. Amount to principal | I. Amount to interest | J. Amount to escrow | K. Amount to fees or charges | L. Unapplied funds | M. Principal balance | N. Accrued interest balance | O. Escrow balance | P. Fees / Charges balance | Q. Unapplied funds balance |
| | SEE ATTACHED ACCOUNT STATEMENT | | | | | | | | | | | | | | | |

20150615-00090546-0 1/2
Ventura County Clerk and Recorder
MARK A. LUNN
06/15/2015 12:42:48 PM
951798  $51.00  VA

Electronically Recorded in Official Records,
County of Ventura

WHEN RECORDED MAIL TO:
PROFESSIONAL LIEN SERVICES, LLC
15315 Magnolia Blvd., Suite 212
Sherman Oaks, California 91403

RECORDING REQUESTED BY
FIRST AMERICAN TITLE INSURANCE COMPANY

QUASMAR.G/R        NOTICE OF DELINQUENT ASSESSMENT        LIEN NOTICE MAILED

83655 Y

In accordance with California Civil Code Section §5675 and the Declaration of Covenants,
Conditions, and Restrictions (CC&R's), for Regency Hills Neighborhood HOA recorded on 6/17/97 as
Instrument Number 97-074688 in the official records of Ventura County, California, the following is
recorded as a lien on the property described below:

The property upon which these and other subsequent delinquent assessments and other charges
shall constitute a lien is commonly referred to as: 1028 Lambourne Pl, Oak Park, CA 91377 and is
legally described as: Apn Number 801-0-263-085, Lot 8, Unit ___, Tract 4517?1 as shown on the
applicable recorded Tract Map in the records of Ventura County, California.

The name(s) of recorded owner(s) thereof: Frank Adler & Lauren Adler

The mailing address is: 1028 Lambourne Pl, Oak Park, CA 91377

Lien notice mailed to debtor at
address shown. Govt. Code 27297.5

Lien notice mailed to debtor at
address shown. Govt. Code 27297.5

| | |
|---|---|
| Total delinquent assessments from November-13 through today's date amounts to | $2529.73 |
| Other assessments, interest, late charges, attorney fees (if any), collection fees amounts to | $697.10 |
| Total amount of delinquency (See attached exhibit "A") | $3226.83 |

An itemization of these charges is attached hereto. Additional monies will accrue under this claim at the
rate of claimant's regular monthly or special assessments, plus permissible late charges of 10% per
month, cost of assessment lien, reasonable attorney's fees, and interest at the rate of 12% per annum.

Should the Association named herein act to have the lien enforced by non-judicial foreclosure and sale, as
provided in Civil Code Section 5700(a), the Trustee authorized to enforce and release the lien shall be
Witkin & Neal, Inc. 5805 Sepulveda Blvd #670 Van Nuys, CA 91411, (818) 845-8808.

Dated:  June 12 2015

A notary public or other officer
completing this certificate certifies
only the identity of the individual
who signed the document, to which this
certificate is attached, and not the
truthfulness, accuracy, or validity of
that document.

By:  Regency Hills Neighborhood HOA
     Professional Lien Services, LLC

By:  _____
     Josh Spies, Agent

Account Number: 779-1714
1426 Regency Hills

State of California      )
County of Los Angeles    )  ss.

On June 12 2015, before me, SUSAN PAQUETTE,
Notary Public, personally appeared Josh Spies, who proved to me on the
basis of satisfactory evidence to be the person whose name is
subscribed to the within instrument and acknowledged to me that he
executed the same in his authorized capacity and that his signature on
the instrument the person, or the entity upon behalf of which the
person acted, executed the instrument.
I certify under PENALTY OF PERJURY under the laws of the State of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature: _____

(seal of Notary)

SUSAN PAQUETTE
Comm.# 2008999
NOTARY PUBLIC-CALIFORNIA
Los Angeles County
My Comm. Exp. Dec 7, 2018

## EXHIBIT "A"

### Account History Report
### Regency Hills Neighborhood HOA

First American Title Insurance Company
submits this document for recordation
as a courtesy, for physical convenience only.
First American Title Insurance Company has
not examined this document for its validity,
sufficiency, or effect, if any, upon title to the
real property described herein

**Frank & Lauren Adler**

00178-1014
Date Settled:
Unit Type:    01 - Unit Type 01 122.00

Community Address:    1028 Lambourne Place
Oak Park, CA 91377

Mailing Address:    1028 Lambourne Place
Oak Park, CA 91377

Last payment date:    Thu Jul 10, 2014
Last payment amount:    133.00
Current balance:    3,326.83

| Trans Date | Transaction | Charges | Payments | Balance | Date Billed | Reference | Comments |
|---|---|---|---|---|---|---|---|
| 02/01/2013 | Opening Balance | 1,582.03 | | 1,582.03 | | | |
| 02/28/2013 | Collection Costs | 160.00 | | 1,742.03 | | Pre-Lien Notice Se | Pre-Lien Notice Sent 3/11/13 |
| 03/01/2013 | Assessments | 133.00 | | 1,875.03 | | Monthly Charges | Recurring Charges: 03/01/2013 |
| 03/05/2013 | Check Payment | | -133.00 | 1,742.03 | | 1257 | Lock Box: 03/05/2013 |
| 03/18/2013 | Late Charges | 13.30 | | 1,755.33 | | Late Fee | Late Fee: 03/18/2013 |
| 03/26/2013 | Late Charges | | -13.30 | 1,742.03 | | Waive Late Fee | Per Sarah - Pmt Received 3/5 |
| 04/01/2013 | Assessments | 133.00 | | 1,875.03 | | Monthly Charges | Recurring Charges: 04/01/2013 |
| 05/01/2013 | Assessments | 133.00 | | 2,008.03 | | Monthly Charges | Recurring Charges: 05/01/2013 |
| 05/01/2013 | Check Payment | | -383.00 | 1,625.03 | | 1357 | Lock Box: 05/01/2013 |
| 06/01/2013 | Assessments | 133.00 | | 1,758.03 | | Monthly Charges | Recurring Charges: 06/01/2013 |
| 06/03/2013 | Check Payment | | -383.00 | 1,375.03 | | 1416 | Lock Box: 06/03/2013 |
| 07/01/2013 | Assessments | 133.00 | | 1,508.03 | | Monthly Charges | Recurring Charges: 07/01/2013 |
| 08/01/2013 | Assessments | 133.00 | | 1,641.03 | | Monthly Charges | Recurring Charges: 08/01/2013 |
| 08/27/2013 | Checks | | -383.00 | 1,258.03 | | 1518 | Payment, Thank You. |
| 09/01/2013 | Assessments | 133.00 | | 1,391.03 | | Monthly Charges | Recurring Charges: 09/01/2013 |
| 10/01/2013 | Assessments | 133.00 | | 1,524.03 | | Monthly Charges | Recurring Charges: 10/01/2013 |
| 11/01/2013 | Assessments | 133.00 | | 1,657.03 | | Monthly Charges | Recurring Charges: 11/01/2013 |
| 12/01/2013 | Assessments | 133.00 | | 1,790.03 | | Monthly Charges | Recurring Charges: 12/01/2013 |
| 01/01/2014 | Assessments | 133.00 | | 1,923.03 | | Monthly Charges | Recurring Charges: 01/01/2014 |
| 01/02/2014 | Checks | | -766.00 | 1,157.03 | | 1710 | Payment, Thank You. |
| 02/01/2014 | Assessments | 133.00 | | 1,290.03 | | Monthly Charges | Recurring Charges: 02/01/2014 |
| 03/01/2014 | Assessments | 133.00 | | 1,423.03 | | Monthly Charges | Recurring Charges: 03/01/2014 |
| 04/01/2014 | Assessments | 133.00 | | 1,556.03 | | Monthly Charges | Recurring Charges: 04/01/2014 |
| 04/07/2014 | Checks | | -516.00 | 1,040.03 | | 1619 | Payment, Thank You. |
| 05/01/2014 | Assessments | 133.00 | | 1,173.03 | | Monthly Charges | Recurring Charges: 05/01/2014 |
| 06/01/2014 | Assessments | 133.00 | | 1,306.03 | | Monthly Charges | Recurring Charges: 06/01/2014 |
| 07/01/2014 | Assessments | 133.00 | | 1,439.03 | | Monthly Charges | Recurring Charges: 07/01/2014 |
| 07/10/2014 | Check Payment | | -133.00 | 1,306.03 | | 1854 | Lock Box: 07/10/2014 |
| 08/01/2014 | Assessments | 133.00 | | 1,439.03 | | Monthly Charges | Recurring Charges: 08/01/2014 |
| 09/01/2014 | Assessments | 133.00 | | 1,572.03 | | Monthly Charges | Recurring Charges: 09/01/2014 |
| 10/01/2014 | Assessments | 133.00 | | 1,705.03 | | Monthly Charges | Recurring Charges: 10/01/2014 |
| 10/09/2014 | Fine | 100.00 | | 1,805.03 | | Charge Account | Continued Violation |
| 11/01/2014 | Assessments | 133.00 | | 1,938.03 | | Monthly Charges | Recurring Charges: 11/01/2014 |
| 12/01/2014 | Assessments | 133.00 | | 2,071.03 | | Monthly Charges | Recurring Charges: 12/01/2014 |
| 01/01/2015 | Assessments | 122.00 | | 2,193.03 | | Monthly Charges | Recurring Charges: 01/01/2015 |
| 02/01/2015 | Assessments | 122.00 | | 2,315.03 | | Monthly Charges | Recurring Charges: 02/01/2015 |
| 02/09/2015 | Collection Costs | 175.00 | | 2,490.03 | | Pre-Lien Notice Se | Pre-Lien Notice Sent 2/8/15 |
| 02/17/2015 | Late Charges | 12.20 | | 2,502.23 | | Late Fee | Late Fee: 02/17/2015 |
| 03/01/2015 | Assessments | 122.00 | | 2,624.23 | | Monthly Charges | Recurring Charges: 03/01/2015 |
| 03/16/2015 | Late Charges | 12.20 | | 2,636.43 | | Late Fee | Late Fee: 03/16/2015 |
| 04/01/2015 | Assessments | 122.00 | | 2,758.43 | | Monthly Charges | Recurring Charges: 04/01/2015 |
| 04/16/2015 | Late Charges | 12.20 | | 2,770.63 | | Late Fee | Late Fee: 04/16/2015 |
| 05/01/2015 | Assessments | 122.00 | | 2,892.63 | | Monthly Charges | Recurring Charges: 05/01/2015 |
| 05/18/2015 | Late Charges | 12.20 | | 2,904.83 | | Late Fee | Late Fee: 05/18/2015 |
| 06/01/2015 | Assessments | 122.00 | | 3,026.83 | | Monthly Charges | Recurring Charges: 06/01/2015 |
| 06/12/2015 | Collection Costs | 300.00 | | 3,326.83 | | Lien | Lien Filed |

**WILKIN NEAL**
INCORPORATED

Page: **1**   1/13/16

Frank Adler
1028 Lambourne Place
Oak Park CA 91377

TS NUMBER:   **M15-09007**

| Date | | description | Amount | Interest | Rate: | 12 % |
|------|---|-------------|--------|----------|-------|------|
| 3/16/2013 | LF | Late fee | $13.30 | | | |
| 11/1/2013 | AS | Assessment balance forward | $68.73 | $17.49 | | |
| 12/1/2013 | AS | Assessment | $133.00 | $32.63 | | |
| 1/1/2014 | AS | Assessment | $133.00 | $31.18 | | |
| 2/1/2014 | AS | Assessment | $133.00 | $29.82 | | |
| 3/1/2014 | AS | Assessment | $133.00 | $28.80 | | |
| 4/1/2014 | AS | Assessment | $133.00 | $27.24 | | |
| 5/1/2014 | AS | Assessment | $133.00 | $25.93 | | |
| 6/1/2014 | AS | Assessment | $133.00 | $24.57 | | |
| 7/1/2014 | AS | Assessment | $133.00 | $23.26 | | |
| 8/1/2014 | AS | Assessment | $133.00 | $21.91 | | |
| 9/1/2014 | AS | Assessment | $133.00 | $20.55 | | |
| 10/1/2014 | AS | Assessment | $133.00 | $19.24 | | |
| 10/9/2014 | HOA | VIOLATION ($100.00) | $100.00 | | | |
| 11/1/2014 | AS | Assessment | $133.00 | $17.88 | | |
| 12/1/2014 | AS | Assessment | $133.00 | $16.57 | | |
| 1/1/2015 | AS | Assessment | $122.00 | $13.96 | | |
| 2/1/2015 | AS | Assessment | $122.00 | $12.71 | | |
| 3/1/2015 | AS | Assessment | $122.00 | $11.69 | | |
| 4/1/2015 | AS | Assessment | $122.00 | $10.35 | | |
| 5/1/2015 | AS | Assessment | $122.00 | $9.14 | | |
| 6/1/2015 | AS | Assessment | $122.00 | $7.90 | | |
| 6/12/2015 | HOA | HOA pre-lien and lien fees | $635.00 | | | |
| 7/1/2015 | AS | Assessment | $122.00 | $6.70 | | |
| 8/1/2015 | AS | Assessment | $122.00 | $5.45 | | |
| 8/18/2015 | LF | Late fees (2/15-8/15) @ $12.20 each | $85.40 | | | |
| 8/1/2015 | AS | Assessment | $122.00 | $4.21 | | |
| 9/4/2015 | MG | Administration fee | $260.00 | | | |
| 9/16/2015 | LF | September Late Fee | $12.20 | | | |
| 10/1/2015 | AS | Assessment | $122.00 | $3.01 | | |
| 10/16/2015 | LF | Late Fee | $12.20 | | | |
| 11/1/2015 | AS | Assessment | $122.00 | $1.76 | | |
| 11/16/2015 | LF | November Late Fee | $12.20 | | | |
| 12/1/2015 | AS | Assessment | $122.00 | $0.56 | | |
| 12/16/2015 | LF | December Late Fee | $12.20 | | | |
| 1/1/2016 | AS | Assessment | $122.00 | $0.00 | | |

*Wilkin & Neal, Inc. is attempting to collect a debt. Any information obtained will be used for that purpose.*   Page: 1

048

# WITKIN NEAL
### *INCORPORATED*

Page: **2**   *1/13/16*

Frank Adler
1028 Lambourne Place
Oak Park CA 91377

TS NUMBER:   M15-09067

| Date | | description | Amount | Interest | Rate: | 12 % |
|------|------|------|------|------|------|------|
| | | **Sub-Total** | **$4940.34** | | | |
| 9/15/2015 | TR | Secretary of State review | $15.00 | | | |
| 9/15/2015 | TR | Bankruptcy check (PACER) | $50.00 | | | |
| 9/15/2015 | TR | Initial Notice | $300.00 | | | |
| 9/15/2015 | Cost | Notary (Lien & Release) | $20.00 | | | |
| 9/15/2015 | TR | Prepare Release | $45.00 | | | |
| 9/15/2015 | REC | Recording (Release) | $18.00 | | | |
| 9/15/2015 | REC | Courier Service | $5.00 | | | |
| 9/15/2015 | Mail | Mailings | $25.00 | | | |
| 1/11/2016 | TR | Final demand prior to recordation of NOD | $75.00 | | | |
| | | **Sub-Total** | **$553.00** | | | |

**Total Amount Due:**   **$5493.34**

| | |
|------|------|
| Assess: | $3383.73 |
| Late: | $147.50 |
| Interest: | $424.11 |
| Atty Fees: | $0.00 |
| HOA & Mgmt: | $985.00 |
| Trustee Costs: | $68.00 |
| Trustee: | $485.00 |
| Totals: | $$493.34 |

*Through*
*1-13-16*

*Witkin & Neal, Inc. is attempting to collect a debt. Any information obtained will be used for that purpose.*    Page:   2

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

1661 240th Street Harbor City CA 90710

A true and correct copy of the foregoing document entitled Proof of Claim will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On April 28, 2016 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Derik N Lewis    dlewis@vantislaw.com, esieg@vantislaw.com
- Edward A Treder    cdcaecf@bdfgroup.com
- United States Trustee (SV)    ustpregion16.wh.ecf@usdoj.gov
- Nancy J Zamora (TR)    zamora3@aol.com, nzamora@ecf.epiqsystems.com

☐ Service information continued on attached page

2. **SERVED BY UNITED STATES MAIL**:
On April 28, 2016, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Frank and Lauren Adler 1028 Lambourne Place Oak Park CA 91377

☐ Service information continued on attached page

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on *(date)* _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| April 28, 2016 | NEIL B . KATZ | |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012

F 9013-3.1.PROOF.SERVICE

050

ZAMORA & HOFFMEIER
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

U.S. BANK TOWER
633 WEST 5ᵀᴴ STREET, SUITE 2600
LOS ANGELES, CALIFORNIA 90071
TELEPHONE (213) 488-9411
FACSIMILE (213) 488-9418

January 19, 2017

Nancy Hoffmeier Zamora, Esq.
Chapter 7 Trustee
U.S. Bank Tower
633 West 5th Street, Suite 2600
Los Angeles, CA 90071

In Re:          In re Frank Adler and Lauren Adler, Chapter 7 Bankruptcy Case No.
                1:16-bk-10099-VK

Expenses for January 13, 2016 through January 19, 2017

Additional Charges :

|  | Amount |
|---|---|
| COPYSVC | 11.70 |
| FILING/SVC FEE | 208.00 |
| MILEAGE | 40.70 |
| MISC. FEES | 195.00 |
| MISCELLANEOUS | 8,694.58 |
| NOTARY FEE | 15.00 |
| UPS | 22.59 |
| Total costs | $9,187.57 |
| | |
| Balance due | $9,187.57 |

051

1/19/2017
1:26 PM

ZAMORA & HOFFMEIER
Slip Listing

Page      1

---

## Selection Criteria

| Clie.Selection | Include: TRUSTEE/AdlerEx |
|---|---|
| Slip.Transaction Typ | Expense |
| Slip.Classification | Open |

Rate Info - identifies rate source and level

| Slip ID / Dates and Time / Posting Status / Description | Attorney / Activity / Client / Reference | Units / DNB Time / Est. Time / Variance | Rate / Rate Info / Bill Status | Slip Value |
|---|---|---|---|---|
| 67086  EXP<br>6/8/2016<br>WIP<br>INVOICE FOR REAL PROPERTY REPAIRS (PLUMBING) | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 894.00 | 894.00 |
| 67087  EXP<br>6/8/2016<br>WIP<br>INVOICE FOR REAL PROPERTY REPAIRS (ELECTRICAL)  TOTAL CHARGE $238.00 LESS ACCOUNT CREDIT OF $50.00 | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 188.00 | 188.00 |
| 67088  EXP<br>6/10/2016<br>WIP<br>INVOICE FOR REAL PROPERTY REPAIRS (CARPET CLEANING AND CLEANING STONE FLOORING) | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 1751.00 | 1751.00 |
| 67089  EXP<br>6/10/2016<br>WIP<br>INVOICE FOR REAL PROPERTY REPAIRS (SEWER LINE AND DRAIN CLEANING) | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 602.00 | 602.00 |
| 67128  EXP<br>6/9/2016<br>WIP<br>Repairs performed by James Gonzales Home Inspections | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 1050.00 | 1050.00 |
| 67129  EXP<br>6/10/2016<br>WIP<br>House cleaning performed by Rebecca Garcia | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 600.00 | 600.00 |
| 67130  EXP<br>7/7/2016<br>WIP<br>Payment to Gonzalez Gardening Service for gardening ($120), repairs ($300), clean-up ($775) | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 1195.00 | 1195.00 |

1/19/2017                              ZAMORA & HOFFMEIER
1:26 PM                                    Slip Listing                              Page      2

| Slip ID | | Attorney | Units | Rate | Slip Value |
|---|---|---|---|---|---|
| Dates and Time | | Activity | DNB Time | Rate Info | |
| Posting Status | | Client | Est. Time | Bill Status | |
| Description | | Reference | Variance | | |
| 67131 | EXP | EXPenses | 1 | 150.00 | 150.00 |
| 6/28/2016 | | MISCELLANEOUS | | | |
| WIP | | TRUSTEE/AdlerEx | | | |
| Payment to Pestoppers IPM Professionals for bee removal | | | | | |
| 67132 | EXP | EXPenses | 1 | 400.00 | 400.00 |
| 6/17/2016 | | MISCELLANEOUS | | | |
| WIP | | TRUSTEE/AdlerEx | | | |
| Payment to Pestoppers IPM Professionals for rodent extermination services | | | | | |
| 67133 | EXP | EXPenses | 1 | 7.55 | 7.55 |
| 6/2/2016 | | 7/1/2016 MISCELLANEOUS | | | |
| WIP | | TRUSTEE/AdlerEx | | | |
| Southern California Gas Company for utility service from 6/2/16 through 7/1/16 | | | | | |
| 67134 | EXP | EXPenses | 1 | 196.25 | 196.25 |
| 5/31/2016 | | 6/2/2016 MISCELLANEOUS | | | |
| WIP | | TRUSTEE/AdlerEx | | | |
| Southern California Gas Company for utility service from 5/31/16 through 6/2/16 | | | | | |
| 67135 | EXP | EXPenses | 1 | 8.30 | 8.30 |
| 7/1/2016 | | 8/2/2016 MISCELLANEOUS | | | |
| WIP | | TRUSTEE/AdlerEx | | | |
| Southern California Gas Company for utility service from 7/1/16 through 8/2/16 | | | | | |
| 67136 | EXP | EXPenses | 1 | 119.98 | 119.98 |
| 6/11/2016 | | 7/11/2016 MISCELLANEOUS | | | |
| WIP | | TRUSTEE/AdlerEx | | | |
| Oak Park Water for water service from 6/11/16 through 7/11/16 paid 07/29/16 | | | | | |
| 67137 | EXP | EXPenses | 1 | 150.94 | 150.94 |
| 5/31/2016 | | 6/11/2016 MISCELLANEOUS | | | |
| WIP | | TRUSTEE/AdlerEx | | | |
| Oak Park Water for water service from 5/31/16 through 6/11/16 | | | | | |
| 67138 | EXP | EXPenses | 1 | 118.67 | 118.67 |
| 5/31/2016 | | 6/22/2016 MISCELLANEOUS | | | |
| WIP | | TRUSTEE/AdlerEx | | | |
| Southern California Edison for utility service from 5/31/16 through 6/22/16 | | | | | |
| 67139 | EXP | EXPenses | 1 | 99.09 | 99.09 |
| 6/22/2016 | | 7/22/2016 MISCELLANEOUS | | | |
| WIP | | TRUSTEE/AdlerEx | | | |
| Southern California Edison for utility service from | | | | | |

1/19/2017                              ZAMORA & HOFFMEIER
1:26 PM                                   Slip Listing                              Page    3

| Slip ID<br>Dates and Time<br>Posting Status<br>Description | | Attorney<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|---|
| 6/22/16 through 7/22/16 | | | | | |
| 67216<br>11/6/2016<br>WIP<br>OAK PARK WATER SERVICE BILL PAID 11/06/16 | EXP | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 183.37 | 183.37 |
| 67217<br>11/2/2016<br>WIP<br>GAS COMPANY BILL PAID 11/02/16 | EXP | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 6.57 | 6.57 |
| 67218<br>10/7/2016<br>WIP<br>GAS COMPANY BILL PAID 10/07/16 | EXP | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 8.12 | 8.12 |
| 67219<br>9/30/2016<br>WIP<br>Southern California Edison for utility service paid 09/30/16 | EXP | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 308.06 | 308.06 |
| 67220<br>8/29/2016<br>WIP<br>OAK PARK WATER SERVICE BILL PAID 08/29/16 | EXP | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 90.50 | 90.50 |
| 67221<br>7/29/2016<br>WIP<br>OAK PARK WATER SERVICE BILL PAID 07/29/16 | EXP | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 119.88 | 119.88 |
| 67292<br>12/6/2016<br>WIP<br>Southern California Gas Company bill paid 12/6/16 | EXP | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 8.70 | 8.70 |
| 67296<br>12/28/2016<br>WIP<br>Southern California Gas Company bill paid 12/28/16 | EXP | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 20.34 | 20.34 |
| 67297<br>12/28/2016<br>WIP<br>OAK PARK WATER SERVICE BILL PAID 12/28/16 | EXP | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 140.75 | 140.75 |

**054**

1/19/2017                          ZAMORA & HOFFMEIER
1:26 PM                              Slip Listing                              Page      4

| Slip ID<br>Dates and Time<br>Posting Status<br>Description | | Attorney<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|---|
| 67307<br>1/11/2017<br>WIP<br>Southern California Gas Company bill paid 1/11/17 | EXP | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 9.68 | 9.68 |
| 67319<br>3/24/2016<br>WIP<br>CERTIFIED COPY OF PETITION | EXP | EXPenses<br>COPYSVC<br>TRUSTEE/AdlerEx | 1 | 11.70 | 11.70 |
| 67320<br>3/24/2016<br>WIP<br>RECORDING CERTIFIED COPY OF PETITION<br>W/ VENTURA COUNTY | EXP | EXPenses<br>FILING/SVC FEE<br>TRUSTEE/AdlerEx | 1 | 27.00 | 27.00 |
| 67323<br>1/6/2017<br>WIP<br>UPS CHARGES FOR JANUARY 2017 | EXP | EXPenses<br>UPS<br>TRUSTEE/AdlerEx | 1 | 22.59 | 22.59 |
| 67324<br>1/6/2017<br>WIP<br>NOTARY FEE FOR DEED | EXP | EXPenses<br>NOTARY FEE<br>TRUSTEE/AdlerEx | 1 | 15.00 | 15.00 |
| 67325<br>3/24/2016<br>WIP<br>MILEAGE FROM WOODLAND HILLS<br>(BANKRUPTCY COURT) TO OXNARD<br>(VENTURA COUNTY RECORDER'S OFFICER) | EXP | EXPenses<br>MILEAGE<br>TRUSTEE/AdlerEx | 74 | 0.55 | 40.70 |
| 67331<br>1/19/2017<br>WIP<br>FILING FEE FOR SALE MOTION | EXP | EXPenses<br>FILING/SVC FEE<br>TRUSTEE/AdlerEx | 1 | 181.00 | 181.00 |
| 67332<br>8/25/2016<br>WIP<br>Southern California Edison for utility service from<br>7/23/16 through 8/22/16 | EXP | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 190.92 | 190.92 |
| 67333<br>11/30/2016<br>WIP<br>OAK PARK WATER SERVICE BILL PAID 11/30/16 | EXP | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 68.98 | 68.98 |

1/19/2017                        ZAMORA & HOFFMEIER
1:26 PM                              Slip Listing                                    Page      5

| Slip ID<br>Dates and Time<br>Posting Status<br>Description | | Attorney<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|---|
| 67334<br>9/19/2016<br>WIP<br>Southern California Gas Company bill paid 9/19/16 | EXP | EXPenses<br>MISCELLANEOUS<br>TRUSTEE/AdlerEx | 1 | 7.93 | 7.93 |
| 67335<br>12/28/2016<br>WIP<br>UP-FRONT DOCUMENT FEE FOR HOA<br>DOCUMENTS PAID TO ROSS MORGAN & CO. | EXP | EXPenses<br>MISC. FEES<br>TRUSTEE/AdlerEx | 1 | 195.00 | 195.00 |

Grand Total

|  | | | | | |
|---|---|---|---|---|---|
| Billable |  | | 0.00 | | 9187.57 |
| Unbillable |  | | 0.00 | | 0.00 |
| Total |  | | 0.00 | | 9187.57 |

**056**



**Valley Preferred**
*Services*

**Joe Ruiz**

Services:
Pool & Spa Maintenance - Repairs & Restoration
Heaters - Pumps & Salt Water Systems Installations

Garage Doors - Openers - Fireplaces
Rain Gutters
New Installations

**Cell: 818.645.3932**

# Invoice: #06789112

**CUSTOMER NAME:** Behnaz Tavakoli
**Phone Number:** (818) 657-4607 (818)326-7760
**Fax Number:** (818)
**E-mail:** behnaztavakoli@aol.com

**JOB ADDRESS:** 1028 Lambourne Pl
**CITY:** Oak Park, Ca. 91377

**Services:**

Empty pool water and acid wash

Refill pool, add conditioner to pool water and valance chemicals' **$500.00**

Monthly pool service: June, July, August, September, October, November and December 2016,

January and February 2017, Pool service total **$630.00**

**Grand Total $1130.00**

*Joe Ruiz*
*Pool Technician*
**Cell (818) 200-6193**

Page 1 of 1

058

# Trustee Insurance Agency

Trustee Insurance Agency
2813 West Main
Kalamazoo, MI 49006

(877) 237-8167
JAC@trusteeresourcegroup.com

## Statement

| Date | Statement # |
|------|-------------|
| 01/16/2017 | 2810 |

To

Nancy Zamora
RE: Adler Case# 16-10099
633 West 5th Street, Suite 2600
Los Angeles, CA 90071
United States of America

| Date | Activity | Amount | Balance |
|------|----------|--------|---------|
| 05/31/2016 | Balance Forward | | 0.00 |
| 06/01/2016 | Invoice #6748 | 1,710.00 | 1,710.00 |
| | --- 06/01/2016 1028 Lambourne Place, Oak Park, CA 91377 (2610 sq ft) | | |
| | Insured Value: $700,000.00 | | |
| | Coverage Period: 6/1/16 - 9/1/16 | | |
| | Deductible: $2,500.00 = $1,680.00 | | |
| | --- 06/01/2016 General Liability: $1 million per occurrence/$2 million aggregate = $30.00 | | |
| | --- 06/01/2016 Trustee Resource Group will finance premium payment until close of escrow at a rate of 7% (annualized) = | | |
| 09/01/2016 | Invoice #7052 | 570.00 | 2,280.00 |
| | --- 09/01/2016 1028 Lambourne Place, Oak Park, CA 91377 (2610 sq ft) | | |
| | Insured Value: $700,000.00 | | |
| | Coverage Period: 9/1/16-9/30/16 | | |
| | Deductible: $2,500.00 = $560.00 | | |
| | --- 06/01/2016 General Liability: $1 million per occurrence/$2 million aggregate = $10.00 | | |
| | --- 09/01/2016 Trustee Resource Group will finance premium payment until close of escrow at a rate of 7% (annualized) = | | |
| 10/01/2016 | Invoice #7309 | 570.00 | 2,850.00 |
| | --- 10/01/2016 1028 Lambourne Place, Oak Park, CA 91377 (2610 sq ft) | | |
| | Insured Value: $700,000.00 | | |
| | Deductible: $2,500.00 = $560.00 | | |
| | --- 10/01/2016 General Liability: $1 million per occurrence/$2 million aggregate = $10.00 | | |
| | --- 10/01/2016 Trustee Resource Group will finance premium payment until close of escrow at a rate of 7% (annualized) = | | |
| 11/01/2016 | Invoice #7501 | 570.00 | 3,420.00 |
| | Continue to the next page | | |

**059**

Page 2 of 2

| Date | Activity | Amount | Balance |
|---|---|---|---|
| 12/01/2016 | --- 11/01/2016 1028 Lambourne Place, Oak Park, CA 91377 (2610 sq ft)<br>Insured Value: $700,000.00<br>Deductible: $2,500.00 = $560.00<br>--- 11/01/2016 General Liability: $1 million per occurrence/$2 million aggregate = $10.00<br>--- 11/01/2016 Trustee Resource Group will finance premium payment until close of escrow at a rate of 7% (annualized) = Invoice #7690 | 570.00 | 3,990.00 |
| 01/01/2017 | --- 12/01/2016 1028 Lambourne Place, Oak Park, CA 91377 (2610 sq ft)<br>Insured Value: $700,000.00<br>Deductible: $2,500.00 = $560.00<br>--- 12/01/2016 General Liability: $1 million per occurrence/$2 million aggregate = $10.00<br>--- 12/01/2016 Trustee Resource Group will finance premium payment until close of escrow at a rate of 7% (annualized) = Invoice #7778 | 570.00 | 4,560.00 |
| 02/01/2017 | --- 01/01/2017 1028 Lambourne Place, Oak Park, CA 91377 (2610 sq ft)<br>Insured Value: $700,000.00<br>Deductible: $2,500.00 = $560.00<br>--- 01/01/2017 General Liability: $1 million per occurrence/$2 million aggregate = $10.00<br>--- 01/01/2017 Trustee Resource Group will finance premium payment until close of escrow at a rate of 7% (annualized) = Invoice #7904 | 929.10 | 5,489.10 |
|  | --- 02/01/2017 1028 Lambourne Place, Oak Park, CA 91377 (2610 sq ft)<br>Insured Value: $700,000.00<br>Deductible: $2,500.00 = $560.00<br>--- 02/01/2017 General Liability: $1 million per occurrence/$2 million aggregate = $10.00<br>--- 02/01/2017 Finance Charge through 2/28/17 = $359.10<br>--- 02/01/2017 Trustee Resource Group will finance premium payment until close of escrow at a rate of 7% (annualized) = | | |

| Current Due | 1-30 Days Past Due | 31-60 Days Past Due | 61-90 Days Past Due | 90+ Days Past Due | Amount Due |
|---|---|---|---|---|---|
| $929.10 | $570.00 | $570.00 | $570.00 | $2,850.00 | $5,489.10 |

Trustee Insurance Agency          (877) 237-8167          JAC@trusteeresourcegroup.com

**060**

### ZAMORA & HOFFMEIER
A PROFESSIONAL CORPORATION
ATTORNEYS AT LAW

U.S. BANK TOWER
633 WEST 5ᵗʰ STREET, SUITE 2600
LOS ANGELES, CALIFORNIA 90071
TELEPHONE (213) 488-9411
FACSIMILE (213) 488-9418

January 19, 2017

Nancy Hoffmeier Zamora, Esq.
Chapter 7 Trustee
U.S. Bank Tower
633 West 5th Street, Suite 2600
Los Angeles, CA 90071

In Re:        In re Frank Adler and Lauren Adler, Chapter 7 Bankruptcy Case No.
              1:16-bk-10099-VK

Expenses for January 13, 2016 through January 19, 2017

Additional Charges :

|  | Amount |
|---|---|
| MILEAGE | 143.00 |
| PACER | 2.40 |
| PHOTOCOPIES | 939.00 |
| POSTAGE | 237.71 |
| RESEARCH | 1,249.24 |
| Total costs | $2,571.35 |
| | |
| Balance due | $2,571.35 |

061

1/19/2017                                ZAMORA & HOFFMEIER
1:31 PM                                      Slip Listing                                    Page       1

| Selection Criteria |
|---|

| Clie.Selection | Include: TRUSTEE/Adler |
|---|---|
| Slip.Transaction Typ | Expense |
| Slip.Classification | Open |

Rate Info - identifies rate source and level

| Slip ID<br>Dates and Time<br>Posting Status<br>Description | Attorney<br>Activity<br>Client<br>Reference | Units<br>DNB Time<br>Est. Time<br>Variance | Rate<br>Rate Info<br>Bill Status | Slip Value |
|---|---|---|---|---|
| 66858     EXP<br>3/1/2016<br>WIP<br>CHARGES FOR LEXIS RESEARCH MARCH 2016 | EXPenses<br>3/31/2016 RESEARCH<br>TRUSTEE/Adler | 1 | 784.00 | 784.00 |
| 66859     EXP<br>4/1/2016<br>WIP<br>CHARGES FOR LEXIS RESEARCH APRIL 2016 | EXPenses<br>4/30/2016 RESEARCH<br>TRUSTEE/Adler | 1 | 419.24 | 419.24 |
| 66862     EXP<br>1/13/2016<br>WIP<br>PACER CHARGES FROM 01/13/16 THROUGH<br>03/31/16 | EXPenses<br>3/31/2016 PACER<br>TRUSTEE/Adler | 7 | 0.10 | 0.70 |
| 67248     EXP<br>1/1/2016<br>WIP<br>PACER CHARGES FROM 01/01/16 TO 03/31/16 | EXPenses<br>3/31/2016 PACER<br>TRUSTEE/Adler | 7 | 0.10 | 0.70 |
| 67260     EXP<br>7/1/2016<br>WIP<br>PACER CHARGES FROM 07/01/16 TO 09/30/16 | EXPenses<br>9/30/2016 PACER<br>TRUSTEE/Adler | 10 | 0.10 | 1.00 |
| 67308     EXP<br>12/1/2016<br>WIP<br>LEXIS RESEARCH CHARGES FOR DECEMBER<br>2016 | EXPenses<br>12/31/2016 RESEARCH<br>TRUSTEE/Adler | 1 | 46.00 | 46.00 |
| 67321     EXP<br>1/3/2016<br>WIP<br>PHOTOCOPYING FROM 01/03/16 TO 01/19/17 | EXPenses<br>1/9/2017 PHOTOCOPIES<br>TRUSTEE/Adler | 4695 | 0.20 | 939.00 |
| 67322     EXP<br>1/13/2016<br>WIP<br>POSTAGE FROM 01/13/16 TO 01/19/17 | EXPenses<br>1/19/2017 POSTAGE<br>TRUSTEE/Adler | 1 | 237.71 | 237.71 |

1/19/2017                          ZAMORA & HOFFMEIER
1:31 PM                               Slip Listing                                Page      2

| Slip ID Dates and Time Posting Status Description | | Attorney Activity Client Reference | Units DNB Time Est. Time Variance | Rate Rate Info Bill Status | Slip Value |
|---|---|---|---|---|---|
| 67326 3/14/2016 WIP TRAVEL FROM DOWNTOWN LOS ANGELES (OFFICE) TO WOODLAND HILLS (BANKRUPTCY COURT) AND RETURN | EXP | EXPenses MILEAGE TRUSTEE/Adler | 52 | 0.55 | 28.60 |
| 67327 5/13/2016 WIP TRAVEL FROM DOWNTOWN LOS ANGELES (OFFICE) TO WOODLAND HILLS (BANKRUPTCY COURT) AND RETURN | EXP | EXPenses MILEAGE TRUSTEE/Adler | 52 | 0.55 | 28.60 |
| 67328 2/9/2017 WIP TRAVEL FROM DOWNTOWN LOS ANGELES (OFFICE) TO WOODLAND HILLS (BANKRUPTCY COURT) AND RETURN | EXP | EXPenses MILEAGE TRUSTEE/Adler | 52 | 0.55 | 28.60 |
| 67329 5/12/2016 WIP TRAVEL FROM DOWNTOWN LOS ANGELES (OFFICE) TO WOODLAND HILLS (BANKRUPTCY COURT) AND RETURN | EXP | EXPenses MILEAGE TRUSTEE/Adler | 52 | 0.55 | 28.60 |
| 67330 8/25/2016 WIP TRAVEL FROM DOWNTOWN LOS ANGELES (OFFICE) TO WOODLAND HILLS (BANKRUPTCY COURT) AND RETURN | EXP | EXPenses MILEAGE TRUSTEE/Adler | 52 | 0.55 | 28.60 |

| Grand Total | | | | |
|---|---|---|---|---|
| | Billable | 0.00 | | 2571.35 |
| | Unbillable | 0.00 | | 0.00 |
| | Total | 0.00 | | 2571.35 |

# EXHIBIT  C



**Fidelity National Title Company**
5000 Van Nuys Blvd., Suite 500, Sherman Oaks, CA 91403
Phone: (818) 881-7800   •   Fax: (818) 776-8528

Issuing Policies of Fidelity National Title Insurance Company

ORDER NO.: **00141166-994-VNO-SI**
LOAN NO.:

Escrow Officer: Van Nuys Title Only EO
Title Officer: Sheila Isham
Phone: (818) 758-5718
Fax: (818) 475-5013
Email: team.sheila@fnf.com

Encore Escrow
23901 Calabasas Rd, Suite 1033
Calabasas, CA 91302

ATTN:       Jenica Pivnik
YOUR REF:   14985-JP

PROPERTY:   **1028 Lambourne Place, Oak Park, CA**

## AMENDED **PRELIMINARY REPORT**

*In response to the application for a policy of title insurance referenced herein, Fidelity National Title Company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Fidelity National Title Insurance Company, a California Corporation.*

**Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

*It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.*

Countersigned by:

*Cindy Fried*

Authorized Signature

**Fidelity National Title Company**
5000 Van Nuys Blvd., Suite 500, Sherman Oaks, CA 91403
Phone: (818) 881-7800   •   Fax: (818) 776-8528

## AMENDED PRELIMINARY REPORT

**EFFECTIVE DATE:**          December 12, 2016 at 7:30 a.m., Amended: December 21, 2016, Amendment No. 2

**ORDER NO.: 00141166-994-VNO-SI**

The form of policy or policies of title insurance contemplated by this report is:

**ALTA Homeowner's Policy of Title Insurance (12-2-13)**
**ALTA Extended Loan Policy (6-17-06)**

1.     THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

   **A FEE**

2.     TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

   **Frank Adler and Lauren Adler, husband and wife, as joint tenants, subject to proceedings pending in the bankruptcy court where a petition for relief was filed.**

   **Name of Debtor: Frank Adler and Lauren Adler**
   **Date of Filing: March 23, 2016**
   **U.S. District Court: Central District Court**
   **Case No: 1:16-Bk-10099-Vk**

3.     THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

   **See Exhibit A attached hereto and made a part hereof.**

CLTA Preliminary Report Form – Modified (11/17/06)                                             Page 2

**065**

PRELIMINARY REPORT
YOUR REFERENCE: 14985-JP

Fidelity National Title Company
ORDER NO.: 00141166-994-VNO-SI

## EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

LOT 8, TRACT NO. 4517-1, IN THE COUNTY OF VENTURA, STATE OF CALIFORNIA, AS SHOWN ON A MAP RECORDED IN BOOK 128, PAGE(S) 71 TO 80 INCLUSIVE, OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

EXCEPT AN UNDIVIDED ONE-HALF INTEREST IN ALL OIL, GAS, MINERALS AND ALL OIL, GAS AND MINERAL RIGHTS UPON AND UNDER SAID LAND, WITH NO RIGHT OF SURFACE ENTRY IN CONNECTION THEREWITH, AS RESERVED BY ALBERTSON COMPANY, A CORPORATION, IN DEED RECORDED APRIL 8, 1954 AS
DOCUMENT NO. 10012 IN BOOK 1194, PAGE 551 OF OFFICIAL RECORDS.

BY DEED EXECUTED BY THE ALBERTSON COMPANY, RECORDED SEPTEMBER 2, 1959, AS DOCUMENT NO. 34130 IN BOOK 1774, PAGE 441 OF OFFICIAL RECORDS, ALL RIGHT TO ENTER UPON, POSSESS OR USE ANY PART OF THE SURFACE OF SAID LAND OR ANY PART OF THE SUBSURFACE THEREOF TO A DEPTH OF 500 FEET BELOW THE SURFACE OF SAID LAND WAS SURRENDERED.

ALSO EXCEPT AN UNDIVIDED 10 PERCENT OF 100 PERCENT IN ALL OIL, GAS AND MINERALS AND ALL OIL, GAS AND MINERALS RIGHTS UPON AND UNDER SAID LAND, AS GRANTED TO THE ALBERTSON COMPANY, A CORPORATION, IN DEED RECORDED SEPTEMBER 2, 1959, AS DOCUMENT NO. 34129 IN BOOK 1774, PAGE 440 OF OFFICIAL RECORDS.

BY DEED EXECUTED BY THE ALBERTSON COMPANY, RECORDED SEPTEMBER 2, 1959 AS DOCUMENT NO. 34130 IN BOOK 1774, PAGE 441 OF OFFICIAL RECORDS, ALL RIGHT TO ENTER UPON, POSSESS OR USE ANY PART OF THE SUBSURFACE THEREOF TO A DEPTH OF 500 FEET BELOW THE SURFACE OF SAID LAND WAS SURRENDERED.

APN: 801-0-263-085

CLTA Preliminary Report Form – Modified (11/17/06)

Page 3

PRELIMINARY REPORT                                        Fidelity National Title Company
YOUR REFERENCE: 14985-JP                                  ORDER NO.: 00141166-994-VNO-SI

## EXCEPTIONS

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION
TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

1.    Property taxes, including any personal property taxes and any assessments collected with taxes are as follows:

|                         |                       |
|-------------------------|-----------------------|
| Code Area:              | 74-009                |
| Tax Identification No.: | .-085                 |
| Fiscal Year:            | 2016-2017             |
| 1st Installment:        | $4,365.16 Paid        |
| 2nd Installment:        | $4,365.16 Unpaid      |
| Exemption:              | $7,000.00             |
| Land:                   | $264,590.00           |
| Improvements:           | $429,349.00           |
| Personal Property:      | $0.00                 |
| Bill No.:               | 3281630               |

2.    The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of
Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and
Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a
result of changes in ownership or new construction occurring prior to Date of Policy.

Note: If said supplementals (if any) are not posted prior to the date of closing, this company assumes no liability for
payment thereof.

3.    Water rights, claims or title to water, whether or not disclosed by the public records.

4.    Easement(s) for the purpose(s) shown below and rights incidental thereto as reserved in a document:

|                  |                                                                   |
|------------------|-------------------------------------------------------------------|
| Reserved by:     | James E Jordan and Marian I. Jordan, his wife as joint tenants    |
| Purpose:         | Ingress, egress and utilities                                     |
| Recording Date:  | September 2, 1959                                                 |
| Recording No:    | Book 1774 , Page 442 , Official Records                          |
| Affects:         | Said land                                                         |

5.    Easement(s) for the purpose(s) shown below and rights incidental thereto as condemned by instrument,

|                  |                                                                   |
|------------------|-------------------------------------------------------------------|
| Entitled:        | Metropolitan Development Corporation, vs. the County of Ventura, et al |
| Court:           | Superior Court of The State of California                         |
| Case No.:        | 55879                                                             |
| In favor of:     | As provided therein                                              |
| Purpose:         | Easement                                                          |
| Recording Date:  | February 12, 1976                                                |
| Recording No.:   | Book 4538, Page 359, Official Records                            |
| Affects:         | Said land                                                         |
| Affects:         | The herein described Land and other land.                        |

6.    Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to
those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap,
national origin, citizenship, immigration status, primary language, ancestry, source of income, gender, gender
identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws,
except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

|                  |                                                                   |
|------------------|-------------------------------------------------------------------|
| Recording Date:  | February 12, 1976                                                |
| Recording No:    | Book 4538, Page 400, Official Records                            |

CLTA Preliminary Report Form – Modified (11/17/06)                                    Page 4

**067**

## EXCEPTIONS
### (Continued)

Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

7.  Matters contained in that certain document

    | | |
    |---|---|
    | Entitled: | Agreement |
    | Executed by: | Metropolitan Development Corporation, a Delaware Corporation and County of Ventura |
    | Recording Date: | December 8, 1976 |
    | Recording No.: | Book 4726, Page 813, Official Records |

    Reference is hereby made to said document for full particulars

8.  Matters contained in that certain document

    | | |
    |---|---|
    | Entitled: | Covenant Running with the Land |
    | Dated: | June 29, 1981 |
    | Executed by: | Metropolitan Development Corporation and Oak Park Unified School District |
    | Recording Date: | December 3, 1981 |
    | Recording No.: | 1981-114669, , Official Records |

    Reference is hereby made to said document for full particulars

9.  Easement(s) for the purpose(s) shown below and rights incidental thereto as granted in a document:

    | | |
    |---|---|
    | Granted To: | Pardee Construction Company, a California Corporation |
    | Purpose: | Access, ingress, egress, grading, construction and incidental purposes |
    | Recording Date: | December 14, 1995 |
    | Recording No: | 1995-154102, Official Records |
    | Affects: | Said land |

10. Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including, but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, citizenship, immigration status, primary language, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable laws, as set forth in the document referred to in the numbered item last above shown.

    Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

11. Easement(s) for the purpose(s) shown below and rights incidental thereto as delineated or as offered for dedication on the map of said tract.

    | | |
    |---|---|
    | Purpose: | Public service |
    | Affects: | Westerly 5 feet of said land |

12. Covenants, conditions and restrictions but omitting any covenants or restrictions, if any, including but not limited to those based upon race, color, religion, sex, sexual orientation, familial status, marital status, disability, handicap, national origin, citizenship, immigration status, primary language, ancestry, source of income, gender, gender identity, gender expression, medical condition or genetic information, as set forth in applicable state or federal laws, except to the extent that said covenant or restriction is permitted by applicable law, as set forth in the document

PRELIMINARY REPORT                                          Fidelity National Title Company
YOUR REFERENCE: 14985-JP                          ORDER NO.: 00141166-994-VNO-SI

## EXCEPTIONS
### (Continued)

Recording Date:          June 17, 1997
Recording No:            1997-074688, Official Records


Said covenants, conditions and restrictions provide that a violation thereof shall not defeat the lien of any mortgage or deed of trust made in good faith and for value.

The provisions of said covenants, conditions and restrictions were extended to include the herein described Land by an instrument

Recording Date:          June 17, 1997
Recording No.:           1997-074688, Official Records

Modification(s) of said covenants, conditions and restrictions

Recording Date:          September 19, 1997
Recording No:            1997-122685, Official Records

13.  Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document

Granted To:              Southern California Edison Company
Purpose:                 Public utilities
Recorded Date:           October 28, 1997
Recording No.:           1997-143819 , Official Records

Affects:                 Within six feet of all front lot lines and within three feet of the side lot lines

14.  Matters contained in that certain document

Entitled:                Declaration of Restrictions for Tracts
Executed by:             Pardee Construction and Triunfo Sanitation District
Recording Date:          February 20, 1998
Recording No.:           1998-024066 , Official Records

Reference is hereby made to said document for full particulars

Said matter affects: Lots 3 to 8, 10, 20, 21, and 23 to 25 and other property

15.  A deed of trust to secure an indebtedness in the amount shown below,

Amount:                  $750,000.00
Dated:                   November 28, 2005
Trustor/Grantor:         Frank Adler and Lauren Adler, husband and wife
Trustee:                 Golden West Savings Association Service Co., a California Corporation
Beneficiary:             World Savings Bank, FSB, its Successor and/or Assignees
Loan No.:                0041503459
Recording Date:          December 7, 2005
Recording No:            20051207-0300644, Official Records

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

Trustee:                 Barrett Daffin Frappier Treder and Weiss, LLP
Recording Date:          December 3, 2015
Recording No.:           20151203-00174974-0, Official Records

CLTA Preliminary Report Form – Modified (11/17/06)                                    Page 6

069

PRELIMINARY REPORT
YOUR REFERENCE: 14985-JP

Fidelity National Title Company
ORDER NO.: 00141166-994-VNO-SI

## EXCEPTIONS
### (Continued)

A Notice of Default under the terms of said trust deed

| | |
|---|---|
| Executed By: | Barrett Daffin Frappier Treder and Weiss, LLP |
| Recording Date: | December 4, 2015 |
| Recording No.: | 20151204-00175399-0, Official Records |

By various assignments, the beneficial interest thereunder is now held of record in:

| | |
|---|---|
| Assignee: | Prof-2013-s3 legal title trust IV, by U.S. Bank National Association, as legal title trustee |
| Loan No.: | None Shown |
| Recording Date: | December 1, 2016 |
| Recording No: | 20161201-177897, Official Records |

16.    A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $405,000.00 |
| Dated: | October 6, 2006 |
| Trustor/Grantor: | Frank Adler and Lauren Adler |
| Trustee: | First American Title Insurance Company, a California Corporation |
| Beneficiary: | Washington Mutual Bank, a Federal Association |
| Loan No.: | 5186 |
| Recording Date: | November 29, 2006 |
| Recording No: | 20061129-251253, Official Records |

The Deed of Trust set forth above is purported to be a "Credit Line" Deed of Trust. Under California Civil Code Section 2943.1 it is a requirement that the Trustor/Grantor of said Deed of Trust either immediately provide the beneficiary with the "Borrower's instruction to Suspend and Close Equity Line of Credit" or provide a satisfactory subordination of this Deed of Trust to the proposed Deed of Trust to be recorded at closing.

If the above credit line is being paid off, this Company will require that Escrow obtain written confirmation from the current Beneficiary that the account has been frozen prior to recording. Failure to do so will result in this Company holding funds at the close of Escrow until such confirmation is obtained from the Beneficiary.

Assignment of the beneficial interest under said deed of trust which names:

| | |
|---|---|
| Assignee: | JPMorgan Chase Bank, National Association |
| Recording Date: | August 28, 2013 |
| Recording No.: | 20130828-150300, Official Records |

The effect of a full reconveyance recorded May 20, 2015 at 20150520-76510, Official Records, which purports to reconvey the above-mentioned Deed of Trust.

No statement is made hereto as to the effect or validity of said reconveyance.

The requirement that this Company be furnished with confirmation from the lender that the Deed of Trust has been released prior to issuance of a policy of title insurance.

PRELIMINARY REPORT                                                Fidelity National Title Company
YOUR REFERENCE: 14985-JP                                    ORDER NO.: 00141166-994-VNO-SI

## EXCEPTIONS
### (Continued)

17.    Notice of delinquent assessments and lien payable to the Owners' Association pursuant to the declaration herein.

|  |  |
|---|---|
| Name of Declaration: | Notice of Delinquent Assessment |
| Amount: | $3,226.83 |
| Owners Association: | Regency Hills Neighborhood Home Owner Association |
| Recording Date: | June 15, 2015 |
| Recording No: | 20150615-00090546-0, Official Records |

18.    A state tax lien for the amount shown and any other amounts due,

|  |  |
|---|---|
| State Identification No.: | 0309 |
| Filed By: | State of California Franchise Tax Board |
| Taxpayer: | Frank Adler and Lauren Adler |
| Amount: | $18,587.10 |
| Recording Date: | December 10, 2015 |
| Recording No.: | 20151210-0177945-0, Official Records |

**PLEASE REFER TO THE "INFORMATIONAL NOTES" AND "REQUIREMENTS" SECTIONS WHICH
FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

---

**END OF EXCEPTIONS**

---

CLTA Preliminary Report Form – Modified (11/17/06)                                    Page 8

**071**

PRELIMINARY REPORT
YOUR REFERENCE: 14985-JP

Fidelity National Title Company
ORDER NO.: 00141166-994-VNO-SI

## REQUIREMENTS SECTION

1.    In order to complete this report, the Company requires a Statement of Information to be completed by the following party(s),

    Party(s):            All Parties

    The Company reserves the right to add additional items or make further requirements after review of the requested Statement of Information.

    NOTE:  The Statement of Information is necessary to complete the search and examination of title under this order. Any title search includes matters that are indexed by name only, and having a completed Statement of Information assists the Company in the elimination of certain matters which appear to involve the parties but in fact affect another party with the same or similar name. Be assured that the Statement of Information is essential and will be kept strictly confidential to this file.

---

### END OF REQUIREMENTS

---

PRELIMINARY REPORT
YOUR REFERENCE: 14985-JP

Fidelity National Title Company
ORDER NO.: 00141166-994-VNO-SI

## INFORMATIONAL NOTES SECTION

1. None of the items shown in this report will cause the Company to decline to attach CLTA Endorsement Form 100 to an Extended Coverage Loan Policy, when issued.

2. Note: The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land a Single Family Dwelling, known as 1028 Lambourne Place, Oak Park, California to an Extended Coverage Loan Policy.

3. Note: The policy of title insurance will include an arbitration provision. The Company or the insured may demand arbitration provision. Arbitrable matters may include, but are not limited to any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance Coverage.

4. Note: There are NO conveyances affecting said Land recorded within 24 months of the date of this report.

5. Unless this company is in receipt of WRITTEN instructions authorizing a particular policy, Fidelity Title will AUTOMATICALLY issue the American Land Title Association Homeowner's Policy (02/03/10) for all qualifying residential 1-4 properties/transactions to insure the buyer at the close of escrow.

6. If a county recorder, title insurance company, escrow company, real estate broker, real estate agent or association provides a copy of a declaration, governing document or deed to any person, California law requires that the document provided shall include a statement regarding any unlawful restrictions. Said statement is to be in at least 14-point bold face type and may be stamped on the first page of any document provided or included as a cover page attached to the requested document. Should a party to this transaction request a copy of any document reported herein that fits this category, the statement is to be included in the manner described.

7. Any documents being executed in conjunction with this transaction must be signed in the presence of an authorized Company employee, an authorized employee of an agent, an authorized employee of the insured lender, or by using Bancserv or other approved third party service. If the above requirements cannot be met, please call the Company at the number provided in this report

8. Amended Civil Code Section 2941, which becomes effective on January 1, 2002, sets the fee for the processing and recordation of the reconveyance of each Deed of Trust being paid off through this transaction at $45.00. The reconveyance fee must be clearly set forth in the Beneficiary's Payoff Demand Statement ("Demand"). In addition, an assignment or authorized release of that fee, from the Beneficiary to the Trustee of record, must be included. An example of the required language is as follows:

   The Beneficiary identified above hereby assigns, releases or transfers to the Trustee of record, the sum of $45.00, included herein as 'Reconveyance Fees', for the processing and recordation of the Reconveyance of the Deed of Trust securing the indebtedness covered hereby, and the escrow company or title company processing this pay-off is authorized to deduct the Reconveyance Fee from this Demand and forward said fee to the Trustee of record or the successor Trustee under the Trust Deed to be paid off in full.

   In the event that the reconveyance fee and the assignment, release or transfer are not included within the demand statement, then Fidelity National Title Insurance Company and its Underwritten Agent may decline to process the reconveyance and will be forced to return all documentation directly to the Beneficiary for compliance with the requirements of the revised statute.

9. Note: Part of the RESPA Rule to simplify and Improve the Process of Obtaining Mortgages and Reduce Consumer Settlement Costs requires the settlement agent to disclose the agent and underwriter split of title premiums, including endorsements as follows:

   Line 1107 is used to record the amount of the total title insurance premium, including endorsements, that is retained by the title agent. Fidelity National Title Company retains 88% of the total premium and endorsements.

PRELIMINARY REPORT
YOUR REFERENCE: 14985-JP

Fidelity National Title Company
ORDER NO.:  00141166-994-VNO-SI

## INFORMATIONAL NOTES
### (Continued)

    Line 1108 used to record the amount of the total title insurance premium, including endorsements, that is retained by the title underwriter. Fidelity National Title Insurance Company retains 12% of the total premium and endorsements.

---

## END OF INFORMATIONAL NOTES

Sheila Isham/st1

**074**

# FIDELITY NATIONAL FINANCIAL
## PRIVACY NOTICE

At Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF", "our" or "we"), we value the privacy of our customers. This Privacy Notice explains how we collect, use, and protect your information and explains the choices you have regarding that information. A summary of our privacy practices is below. We also encourage you to read the complete Privacy Notice following the summary.

| | |
|---|---|
| **Types of Information Collected.** You may provide us with certain personal information, like your contact information, social security number (SSN), driver's license, other government ID numbers, and/or financial information. We may also receive information from your Internet browser, computer and/or mobile device. | **How Information is Collected.** We may collect personal information directly from you from applications, forms, or communications we receive from you, or from other sources on your behalf, in connection with our provision of products or services to you. We may also collect browsing information from your Internet browser, computer, mobile device or similar equipment. This browsing information is generic and reveals nothing personal about the user. |
| **Use of Your Information.** We may use your information to provide products and services to you (or someone on your behalf), to improve our products and services, and to communicate with you about our products and services. We do not give or sell your personal information to parties outside of FNF for their use to market their products or services to you. | **Security Of Your Information.** We utilize a combination of security technologies, procedures and safeguards to help protect your information from unauthorized access, use and/or disclosure. We communicate to our employees about the need to protect personal information. |
| **Choices With Your Information.** Your decision to submit personal information is entirely up to you. You can opt-out of certain disclosures or use of your information or choose to not provide any personal information to us. | **When We Share Information.** We may disclose your information to third parties providing you products and services on our behalf, law enforcement agencies or governmental authorities, as required by law, and to parties with whom you authorize us to share your information. |
| **Information From Children.** We do not knowingly collect information from children under the age of 13, and our websites are not intended to attract children. | **Privacy Outside the Website.** We are not responsible for the privacy practices of third parties, even if our website links to those parties' websites. |
| **Access and Correction.** If you desire to see the information collected about you and/or correct any inaccuracies, please contact us in the manner specified in this Privacy Notice. | **Do Not Track Disclosures.** We do not recognize "do not track" requests from Internet browsers and similar devices. |
| **The California Online Privacy Protection Act.** Certain FNF websites collect information on behalf of mortgage loan servicers. The mortgage loan servicer is responsible for taking action or making changes to any consumer information submitted through those websites. | **International Use.** By providing us with your information, you consent to the transfer, processing and storage of such information outside your country of residence, as well as the fact that we will handle such information consistent with this Privacy Notice. |
| **Your Consent To This Privacy Notice.** By submitting information to us and using our websites, you are accepting and agreeing to the terms of this Privacy Notice. | **Contact FNF.** If you have questions or wish to contact us regarding this Privacy Notice, please use the contact information provided at the end of this Privacy Notice. |

# FIDELITY NATIONAL FINANCIAL, INC.
## PRIVACY NOTICE

FNF respects and is committed to protecting your privacy. We pledge to take reasonable steps to protect your Personal Information (as defined herein) and to ensure your information is used in compliance with this Privacy Notice.

This Privacy Notice is only in effect for information collected and/or owned by or on behalf of FNF, including collection through any FNF website or online services offered by FNF (collectively, the "Website"), as well as any information collected offline (e.g., paper documents). The provision of this Privacy Notice to you does not create any express or implied relationship, nor create any express or implied duty or other obligation, between FNF and you.

### Types of Information Collected
We may collect two types of information: Personal Information and Browsing Information.

Personal Information. The types of personal information FNF collects may include, but are not limited to:

- contact information (*e.g.*, name, address, phone number, email address);
- social security number (SSN), driver's license, and other government ID numbers; and
- financial account or loan information.

Browsing Information. The types of browsing information FNF collects may include, but are not limited to:

- Internet Protocol (or IP) address or device ID/UDID, protocol and sequence information;
- browser language;
- browser type;
- domain name system requests;
- browsing history;
- number of clicks;
- hypertext transfer protocol headers; and
- application client and server banners.

### How Information is Collected
In the course of our business, we may collect *Personal Information* about you from the following sources:
- applications or other forms we receive from you or your authorized representative, whether electronic or paper;
- communications to us from you or others;
- information about your transactions with, or services performed by, us, our affiliates or others; and
- information from consumer or other reporting agencies and public records that we either obtain directly from those entities, or from our affiliates or others.

We may collect *Browsing Information* from you as follows:
- Browser Log Files. Our servers automatically log, collect and record certain Browsing Information about each visitor to the Website. The Browsing Information includes only generic information and reveals nothing personal about the user.
- Cookies. From time to time, FNF may send a "cookie" to your computer when you visit the Website. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. When you visit the Website again, the cookie allows the Website to recognize your computer, with the goal of providing an optimized user experience. Cookies may store user preferences and other information. You can choose not to accept cookies by changing the settings of your Internet browser. If you choose not to accept cookies, then some functions of the Website may not work as intended.

### Use of Collected Information
Information collected by FNF is used for three main purposes:

- To provide products and services to you, or to one or more third party service providers who are performing services on your behalf or in connection with a transaction involving you;
- To improve our products and services; and
- To communicate with you and to inform you about FNF's products and services.

### When We Share Information
We may share your Personal Information (excluding information we receive from consumer or other credit reporting agencies) and Browsing Information with certain individuals and companies, as permitted by law, without first obtaining your authorization. Such disclosures may include, without limitation, the following:

- to agents, representatives, or others to provide you with services or products you have requested, and to enable us to detect or prevent criminal activity, fraud, or material misrepresentation or nondisclosure;
- to third-party contractors or service providers who provide services or perform other functions on our behalf;
- to law enforcement or other governmental authority in connection with an investigation, or civil or criminal subpoenas or court orders; and/or
- to other parties authorized to receive the information in connection with services provided to you or a transaction involving you.

We may disclose Personal Information and/or Browsing Information when required by law or in the good-faith belief that such disclosure is necessary to:
- comply with a legal process or applicable laws;
- enforce this Privacy Notice;
- investigate or respond to claims that any information provided by you violates the rights of a third party; or
- protect the rights, property or personal safety of FNF, its users or the public.

We make efforts to ensure third party contractors and service providers who provide services or perform functions on our behalf protect your information. We limit use of your information to the purposes for which the information was provided. We do not give or sell your information to third parties for their own direct marketing use.

We reserve the right to transfer your Personal Information, Browsing Information, as well as any other information, in connection with the sale or other disposition of all or part of the

FNF business and/or assets, or in the event of our bankruptcy, reorganization, insolvency, receivership or an assignment for the benefit of creditors. You expressly agree and consent to the use and/or transfer of this information in connection with any of the above-described proceedings. We cannot and will not be responsible for any breach of security by any third party or for any actions of any third party that receives any of the information that is disclosed to us.

### Choices With Your Information
Whether you submit your information to FNF is entirely up to you. If you decide not to submit your information, FNF may not be able to provide certain products or services to you. You may choose to prevent FNF from using your information under certain circumstances ("opt out"). You may opt out of receiving communications from us about our products and/or services.

### Security And Retention Of Information
FNF is committed to protecting the information you share with us and utilizes a combination of security technologies, procedures and safeguards to help protect it from unauthorized access, use and/or disclosure. FNF trains its employees on privacy practices and on FNF's privacy and information security policies. FNF works hard to retain information related to you only as long as reasonably necessary for business and/or legal purposes.

### Information From Children
The Website is meant for adults. The Website is not intended or designed to attract children under the age of thirteen (13). We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

### Privacy Outside the Website
The Website may contain links to other websites, including links to websites of third party service providers. FNF is not and cannot be responsible for the privacy practices or the content of any of those other websites.

### International Users
Because FNF's headquarters is located in the United States, we may transfer your Personal Information and/or Browsing Information to the United States. By using our website and providing us with your Personal Information and/or Browsing Information, you understand and consent to the transfer, processing and storage of such information outside your country of residence, as well as the fact that we will handle such information consistent with this Privacy Notice.

### Do Not Track Disclosures
Currently, our policy is that we do not recognize "do not track" requests from Internet browsers and similar devices.

### The California Online Privacy Protection Act
For some websites which FNF or one of its companies owns, such as the Customer CareNet ("CCN"), FNF is acting as a third party service provider to a mortgage loan servicer. In those

instances, we may collect certain information on behalf of that mortgage loan servicer, including:
*   first and last name;
*   property address;
*   user name and password;
*   loan number;
*   social security number - masked upon entry;
*   email address;
*   security questions and answers; and
*   IP address.

The information you submit is then transferred to your mortgage loan servicer by way of CCN. **The mortgage loan servicer is responsible for taking action or making changes to any consumer information submitted through this website. For example, if you believe that your payment or user information is incorrect, you must contact your mortgage loan servicer.**

CCN does not share consumer information with third parties, other than those with which the mortgage loan servicer has contracted to interface with the CCN application. All sections of this Privacy Notice apply to your interaction with CCN, except for the sections titled Choices With Your Information, and Access and Correction. If you have questions regarding the choices you have with regard to your personal information or how to access or correct your personal information, contact your mortgage loan servicer.

### Access and Correction
To access your Personal Information in the possession of FNF and correct any inaccuracies, please contact us by email at privacy@fnf.com or by mail at:

> Fidelity National Financial, Inc.
> 601 Riverside Avenue
> Jacksonville, Florida 32204
> Attn: Chief Privacy Officer

### Your Consent To This Privacy Notice
By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of information by FNF in compliance with this Privacy Notice. We reserve the right to make changes to this Privacy Notice. If we change this Privacy Notice, we will post the revised version on the Website.

### Contact FNF
Please send questions and/or comments related to this Privacy Notice by email at privacy@fnf.com or by mail at:

> Fidelity National Financial, Inc.
> 601 Riverside Avenue
> Jacksonville, Florida 32204
> Attn: Chief Privacy Officer

> Copyright © 2016. Fidelity National Financial, Inc.
> All Rights Reserved.

> EFFECTIVE AS OF APRIL 1, 2016

## Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the field rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for each discount. These discounts only apply to transaction involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

**FNF Underwritten Title Company**
FNTC - Fidelity National Title Company
FNTCCA – Fidelity National Title Company of California

**FNF Underwriter**
FNTIC - Fidelity National Title Insurance Company

**Available Discounts**
**CREDIT FOR PRELIMINARY REPORTS AND/OR COMMITMENTS ON SUBSEQUENT POLICIES (FNTIC)**
Where no major change in the title has occurred since the issuance of the original report or commitment, the order may be reopened within 12 months and all or a portion of the charge previously paid for the report or commitment may be credited on a subsequent policy charge within the following time period from the date of the report.

**DISASTER LOANS (FNTIC)**
The charge for a lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within 24 months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be 50% of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be 50% to 70% of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be 40% to 50% of the appropriate title insurance rate, depending on the type of coverage selected.

## ATTACHMENT ONE

### CALIFORNIA LAND TITLE ASSOCIATION
### STANDARD COVERAGE POLICY – 1990

#### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy; or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

#### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material not shown by the public records.

### CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)
### ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE

#### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   a. building;
   b. zoning;
   c. land use;
   d. improvements on the Land;
   e. land division; and
   f. environmental protection.
   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;

Attachment One (6-5-14) CA & NV

   c.   that result in no loss to You; or
   d.   that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.  Failure to pay value for Your Title.
6.  Lack of a right:
   a.   to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b.   in streets, alleys, or waterways that touch the Land.
   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7.  The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8.  Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9.  Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:
    ■  For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

|  |  | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|---|
| Covered Risk 16: | 1.00% | % of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 10,000.00 |
| Covered Risk 18: | 1.00% | % of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 19: |  | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $ 25,000.00 |
| Covered Risk 21: |  | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $ 5,000.00 |

## 2006 ALTA LOAN POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1.  (a)  Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
      (i)   the occupancy, use, or enjoyment of the Land;
      (ii)  the character, dimensions, or location of any improvement erected on the Land;
      (iii)  the subdivision of land; or
      (iv)  environmental protection;
      or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b)  Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2.  Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3.  Defects, liens, encumbrances, adverse claims, or other matters
    (a)  created, suffered, assumed, or agreed to by the Insured Claimant;
    (b)  not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c)  resulting in no loss or damage to the Insured Claimant;
    (d)  attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13 or 14); or
    (e)  resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4.  Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5.  Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6.  Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
    (a)  a fraudulent conveyance or fraudulent transfer, or
    (b)  a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.
7.  Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

(Except as provided in Schedule B - Part II,( t(or T)his policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

Attachment One (6-5-14) CA & NV

**(PART I**

(The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the Public Records.

**PART II**

In addition to the matters set forth in Part I of this Schedule, the Title is subject to the following matters, and the Company insures against loss or damage sustained in the event that they are not subordinate to the lien of the Insured Mortgage:)

## 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions, or location of any improvement erected on the Land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:
(The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown in the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.
4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and that are not shown by the Public Records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor or material not shown by the Public Records.
7. (Variable exceptions such as taxes, easements, CC&R's, etc. shown here.)

Attachment One (6-5-14) CA & NV

## ALTA EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (12-02-13)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
      (i)   the occupancy, use, or enjoyment of the Land;
      (ii)  the character, dimensions, or location of any improvement erected on the Land;
      (iii) the subdivision of land; or
      (iv)  environmental protection;
      or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.
9. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in Covered Risk 27(b) of this policy.
10. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
11. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

Attachment One (6-5-14) CA & NV



Fidelity National Title Company
This map/plat is being furnished as an aid in locating the herein described Land in relation
to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted.
Except to the extent a policy of title insurance is expressly modified by endorsement, if any,
the Company does not insure dimensions, distances, location of easements, acreage or
other matters shown thereon.

## STATEMENT OF INFORMATION

**CONFIDENTIAL INFORMATION STATEMENT TO BE USED IN CONNECTION WITH ORDER NO: 00141166-994-SI**

*COMPLETION OF THIS FORM WILL EXPEDITE YOUR ORDER AND WILL HELP PROTECT YOU.*

**THE STREET ADDRESS of the property in this transaction is:**

IF NONE LEAVE BLANK

ADDRESS:                                                          CITY:

IMPROVEMENTS: ■ SINGLE RESIDENCE    ■ MULTIPLE RESIDENCE    ■ COMMERCIAL
OCCUPIED BY: ■ OWNER                      ■ LESSEE                    ■ TENANTS
ANY PORTION OF NEW LOAN FUNDS TO BE USED FOR CONSTRUCTION:    ■ YES    ■ NO

| NAME | SPOUSES NAME |
|---|---|
| FIRST        MIDDLE        LAST | FIRST        MIDDLE        LAST |
| BIRTHPLACE        BIRTH DATE | BIRTHPLACE        BIRTH DATE |
| I HAVE LIVED IN CALIFORNIA SINCE        SOCIAL SECURITY NUMBER | I HAVE LIVED IN CALIFORNIA SINCE        SOCIAL SECURITY NUMBER |
| DRIVER'S LICENSE NO. | DRIVER'S LICENSE NO. |
| WIFE'S MAIDEN NAME: | |
| WE WERE MARRIED ON | AT |

### RESIDENCE(S) FOR LAST 10 YEARS

| NUMBER AND STREET | CITY | FROM | TO |
|---|---|---|---|
| NUMBER AND STREET | CITY | FROM | TO |
| NUMBER AND STREET | CITY | FROM | TO |
| NUMBER AND STREET | CITY | FROM | TO |

### OCCUPATION(S) FOR LAST 10 YEARS

**HUSBAND**

| PRESENT OCCUPATION | FIRM NAME | ADDRESS | NO. OF YEARS |
|---|---|---|---|
| PRIOR OCCUPATION | FIRM NAME | ADDRESS | NO. OF YEARS |
| PRIOR OCCUPATION | FIRM NAME | ADDRESS | NO. OF YEARS |

**WIFE**

| PRESENT OCCUPATION | FIRM NAME | ADDRESS | NO. OF YEARS |
|---|---|---|---|
| PRIOR OCCUPATION | FIRM NAME | ADDRESS | NO. OF YEARS |
| PRIOR OCCUPATION | FIRM NAME | ADDRESS | NO. OF YEARS |

FORMER MARRIAGES: IF NO FORMER MARRIAGES, WRITE "NONE":

NAME OF FORMER SPOUSE

IF DECEASED: DATE                                WHERE

**CURRENT LOAN ON PROPERTY**

PAYMENTS ARE BEING MADE TO:                          2.

1.                                                                3.

HOMEOWNERS ASSOCIATION                          NUMBER:

DATE _____    SIGNATURE _____

HOME PHONE _____    BUSINESS PHONE _____

MISC0008 (Rev. 09/15/2011)

084



**Fidelity National Title Company**
5000 Van Nuys Blvd., Suite 500, Sherman Oaks, CA 91403
Phone: (818) 881-7800   •   Fax: (818) 776-8528

## CREDIT LINE / EQUITY LINE OF CREDIT CLOSURE REQUEST

Date: _____

To: _____

_____

_____

_____

**Attention:** Payoff Dept.
**Reference:** Account/Loan # _____
**Property Address:**     1028 Lambourne Place, Oak Park, CA 91377

To Whom It May Concern:

Please accept this letter as a request to close/freeze the above-referenced credit line or equity line of credit as of this date.

I/We agree not to request any advances on this account on or after the date of this letter.

You will be receiving payment in full from the proceeds of our escrow transaction. Upon receipt of payoff, please send your Reconveyance or Release of Lien to:

Fidelity National Title Company
5000 Van Nuys Blvd., Suite 500
Sherman Oaks, CA 91403
Attn: Sheila Isham
Ref: 00141166-994-SI

Sincerely,

_____        _____

_____        _____

_____        _____

(All borrowers must sign)

REQ00001 (Rev. 12/5/2012)

**085**

# EXHIBIT  D



**Encore Escrow Company Inc.**

23901 Calabasas Rd., #1033, Calabasas, CA 91302

(818) 224-2788 • Fax: (818) 224-2789

### SELLER'S ESTIMATED NET PROCEEDS

**PROPERTY:** 1028 Lambourne Place
Oak Park, CA 91377

**DATE:** January 19, 2017

**RECORDING DATE:** February 28, 2017
**ESCROW NO.:** 14985-JP

**SELLER:** Nancy Zamora, also known as Nancy Hoffmeier Zamora, Trustee for the Bankruptcy Estate of Frank Adler and Lauren Adler, Case : 1:16-bk-10099-VK

| | DEBITS | CREDITS |
|---|---|---|
| **FINANCIAL CONSIDERATION** | | |
| Total Consideration | | 970,000.00 |
| **PAYOFF CHARGES -** | | |
| [Total Payoff $825,000.00] | | |
| Estimate | 825,000.00 | |
| **PRORATIONS/ADJUSTMENTS** | | |
| County Taxes at $4365.16/semi-annually from 01/01/2017 to 02/28/2017 | 1,382.30 | |
| **COMMISSION CHARGES** | | |
| Rodeo Realty, Inc. | 9,700.00 | |
| Real Living Pacific Realty | 24,250.00 | |
| **H.O.A./MANAGEMENT** | | |
| Transfer Fee * estimate to Ross Morgan & Company | 375.00 | |
| Assessments * Rough estimate/ dqt HOA to HOA | 8,000.00 | |
| **OTHER DEBITS/CREDITS** | | |
| Zamora & Hoffmeier for reimbursements for costs advanced | 10,000.00 | |
| Trustee Insurance Agency for insurance premium | 5,489.10 | |
| Valley Preferred Services for pool invoice | 1,130.00 | |
| G. Gonzalez for gardening invoice # 14847 / Client 102LAM | 960.00 | |
| Bankruptcy estate for 506(c) and 507(a)(1)(C) | 7,000.00 | |
| **TITLE/TAXES/RECORDING CHARGES - Fidelity National Title** | | |
| Title - Owner's Title Insurance (optional) | 2,346.00 | |
| Title - Sub Escrow Fee | 62.50 | |
| Title - Wire Fee / Inspection est | 95.00 | |
| Recording BK Order | 75.00 | |
| Transfer Tax - County to Ventura County | 1,067.00 | |
| **ESCROW CHARGES - Encore Escrow Company, Inc.** | | |
| Title - Escrow Fee | 2,140.00 | |
| Title - Processing Demands & HOA $50 each | 100.00 | |
| Title - Drawing Grant Deed | 50.00 | |
| Title - Archive / Courier | 65.00 | |
| **Net Proceeds** | 70,713.10 | |
| **TOTAL** | $ 970,000.00 | $ 970,000.00 |

**THIS IS AN ESTIMATE ONLY AND FIGURES ARE SUBJECT TO CHANGE**

086

# EXHIBIT E

BANKRUPTCY SECTION MS A340
FRANCHISE TAX BOARD
PO BOX 2952
SACRAMENTO CA 95812-2952

Phone: (916) 845-4750

Fax:   (916) 845-9799

**Bankruptcy Case Number:**
1610099

**Debtor:**
FRANK ADLER
XXX-XX-7887
LAUREN ADLER
XXX-XX-9586

**Nondebtor:**

## Proof of Claim

UNITED STATES BANKRUPTCY COURT
**Central District of California**

21041 Burbank Blvd
Woodland Hills CA 91367-6603

**Type of Liability:**
Personal Income Tax

## Basis of Liability Statement

| Claim | Basis | Period | Tax | Penalty | Interest | Costs | Total Claim |
|-------|-------|--------|-----|---------|----------|-------|-------------|
| A *** | 1 | 12/31/2012 | $245.00 | $486.93 | $186.70 | $34.00 | $952.63 |
| A *** | 1 | 12/31/2013 | $1,707.00 | $0.00 | $91.89 | $34.00 | $1,832.89 |
| A *** | 1 | 12/31/2014 | $13,972.00 | $1,485.81 | $323.21 | $12.00 | $15,793.02 |
| B *** | 1 | 12/31/2015 | $6,200.00 | $82.03 | $0.00 | $0.00 | $6,282.03 |

| Claim | | Account Number | Basis | |
|-------|--|----------------|-------|--|
| A. | Secured | * XXX-XX-7887 | 1. | Return filed with balance due |
| B. | Unsecured Priority | ** XXX-XX-9586 | 3. | No return filed |
| C. | Unsecured General | *** XXX-XX-7887 & XXX-XX-9586 | 4. | Audit Assessment |
| D. | 1305(a)(1) | | 5. | Other |
| T. | To Be Determined | | 6. | Community Claim (Nondebtor Liability) |

**Tax Lien Information for Secured Claim**

| Lien Certificate Number | Recording Date | County Recorder or Secretary of State | Recording Information | Tax Years Secured |
|-------------------------|----------------|----------------------------------------|------------------------|--------------------|
| 15329850309 * | 12/10/15 | VENTURA | 20151210-00177945-0 | 12, 13, 14 |

The Franchise Tax Board Bankruptcy Section takes an active role in resolving bankruptcy issues. We can receive delinquent tax returns and encourage correspondence and telephone calls. We provide assistance to prevent unnecessary litigation.

FTB 6631 C ARCS (REV 06-2016)

Fill in this information to identify the case:

| | |
|---|---|
| Debtor 1 | FRANK ADLER |
| Debtor 2 (Spouse, if filing) | LAUREN ADLER |
| United States Bankruptcy Court for the: | Central District of California |
| | (State) |
| Case number | 1610099 |

## Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. Do not send original documents; they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

---

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

FRANCHISE TAX BOARD
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☒ No
☐ Yes.    From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notice to the creditor be sent?

BANKRUPTCY SECTION MS A340

FRANCHISE TAX BOARD
Name

PO Box 2952
Number        Street

Sacramento        CA        95812-2952
City        State        ZIP Code

Contact phone    (916) 845-4750

Contact email _____

Where should payments to the creditor be sent? (if different)

Name _____

Number        Street _____

City        Sate        ZIP Code _____

Contact phone _____

Contact email _____

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

___ ___ ___ ___ ─ ___ ___ ___ ___ ─ ___ ___ ___ ___ ─ ___ ___ ___ ___

**4. Does this claim amend one already filed?**

☐ No
☒ Yes. Claim number on court claims registry (if known)    2    Filed on 03/15/2016
                                                                    MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☒ No
☐ Yes. Who made the earlier filing? _____

---

Official Form 410                        Proof of Claim

FTB 6631 C ARCS (REV 08-2016)

088

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| **6.** Do you have any number you use to identify the debtor? | ☐ No <br> ☒ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: <u>7887</u> <br> <u>9586</u> |

**7.** How much is the claim?   $ <u>24,860.57</u>   . Does this amount include interest or other charges?

☐ No

☒ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8.** What is the basis of the claim?

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

<u>Taxes and/or fees</u>

**9.** Is all or part of the claim secured?

☐ No

☒ Yes. The claim is secured by a lien on property.

Nature of property:

☒ Real estate. If the claim is secured by the debtor's principle residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

Basis for perfection:   <u>Notice of State Tax Lien</u>
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of property:   $ _____

Amount of the claim that is secured:   $ <u>18,578.54</u>

Amount of the claim that is unsecured:   $ <u>6,282.03</u>   (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition:   $ _____

Annual Interest Rate (when case was filed) _____ %
☐ Fixed
☒ Variable

**10.** Is this claim based on a lease?

☒ No
☐ Yes. Amount necessary to cure any default as of the date of the petition.   $ _____

**11.** Is this claim subject to a right of setoff?

☒ No
☐ Yes. Identify the property: _____

| | |
|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☐ No |
| | ☒ Yes. *Check all that apply.* |

| | Amount entitled to priority |
|---|---|
| ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| ☒ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ 6,282.03 |
| ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| ☐ Other. Specify subsection of 11 U.S.C. § 507(a)( ) that applies. | $ _____ |

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

\* *Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment.*

---

### Part 3: Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

*Check the appropriate box:*

☐ I am the creditor.

☒ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am the guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    07/12/2016
                    MM / DD / YYYY

/s/: Tahereh Navablan
Signature

**Print the name of the person who is completing and signing this claim:**

| | |
|---|---|
| Name | Tahereh Navablan |
| | First name    Middle name    Last name |
| Title | Franchise Tax Board Claim Agent |
| | BANKRUPTCY SECTION MS A340 |
| Company | FRANCHISE TAX BOARD |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | PO Box 2952 |
| | Number    Street |
| | Sacramento    CA    95812-2952 |
| | City    State    ZIP Code |
| Contact phone | (916) 845-4750    Email _____ |

Official Form 410    Proof of Claim

FTB 6631 C ARCS (REV 08-2016)

BANKRUPTCY SECTION MS A340
FRANCHISE TAX BOARD
PO BOX 2952
SACRAMENTO CA 95812-2952

Phone: (916) 845-4750 Fax: (916) 845-9799

Date: 07/12/16
Bankruptcy Case Number: 1610099
Petition Date: 01/13/2016
Debtor Name: FRANK ADLER
            LAUREN ADLER

## Attachment

Franchise Tax Board (FTB) reserves the right to amend this claim/request based on any audit or investigation of any filed income tax returns or any other audit or investigation.

FTB reserves the right to amend this claim/request in accordance with applicable law, including, without limitation, modifying the amounts claimed as an administrative expense, secured, priority, and unsecured for the purposes of this bankruptcy case.

FTB reserves the right to amend this claim/request to add additional penalties and interest.

FTB's records indicate an income tax return has **not** been filed for the following tax year(s):
N/A

Accordingly, FTB reserves the right to amend this claim/request based upon receipt of such income tax return(s), any audit or investigation of such return(s), or any other audit or investigation.

FTB's claim, to the extent it is secured, is secured by all property and rights to property whether real or personal, tangible or intangible, including all after-acquired property and rights to property, belonging to the debtor(s) and located in this state. (California Revenue & Taxation Code §19221; California Government Code § 7170.) Should the value of the collateral be determined to be less than the amount of the secured claim or should the lien be avoided in whole or in part, FTB reserves the right to amend this claim to state its unsecured non-priority claim and its unsecured priority claim.

FTB 6631 C ARCS (REV 06-2016)

**Fill in this information to identify the case:**

Debtor 1    FRANK & LAUREN ADLER

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the: CENTRAL    District of CALIFORNIA
(State)

Case number 1:16-BK-10099-VK

Official Form 410

# Proof of Claim

12/15

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.

## Part 1: Identify the Claim

| | |
|---|---|
| **1. Who is the current creditor?** | Department of the Treasury - Internal Revenue Service<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| **2. Has this claim been acquired from someone else?** | ■ No<br>☐ Yes. From whom? _____ |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| Internal Revenue Service | Internal Revenue Service |
| Name | Name |
| P.O. Box 7346 | P.O. Box 7317 |
| Number        Street | Number        Street |
| Philadelphia    PA    19101-7346 | Philadelphia    PA    19101-7317 |
| City    State    ZIP Code | City    State    ZIP Code |
| Contact phone    1-800-973-0424 | Contact phone    1-800-973-0424 |
| Contact email | Contact email |
| Creditor Number: 36968190 | |
| Uniform claim identifier for electronic payments in chapter 13 (if you use one) | |
| _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |

| | |
|---|---|
| **4. Does this claim amend one already filed?** | ■ No<br>☐ Yes.    Claim number on court claims registry (if known) _____    Filed on: _____<br>MM / DD  / YYYY |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ■ No<br>☐ Yes.  Who made the earlier filing? _____ |

**Part 2:** Give Information About the Claim as of the Date the Case Was Filed

**6. Do you have any number you use to identify the debtor?**
☐ No
■ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ___See Attachment___

**7. How much is the claim?** $ 124,674.66

Does this amount include interest or other charges?
☐ No
■ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**
Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Taxes

**9. Is all or part of the claim secured?**
■ No
☐ Yes. The claim is secured by a lien on property.

Nature of property:
☐ Real Estate. If the claim is secured by the debtor's principal residence, file a Mortgage Proof of Claim Attachment (Official Form 410-A) with this Proof of Claim.
☐ Motor Vehicle
☐ Other. Describe: _____

Basis for perfection: _____
Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

Value of Property: $_____
Amount of the claim that is secured: $_____
Amount of the claim that is unsecured: $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

Amount necessary to cure any default as of the date of the petition: $_____

Annual Interest Rate (when case was filed) ___%
☐ Fixed
☐ Variable

**10. Is this claim based on a lease?**
■ No
☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

**11. Is this claim subject to a right of setoff?**
☐ No
■ Yes. Identify the property ___See Attachment___

093

| | | Amount entitled to priority |
|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. §507(a)?** A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ No  ☑ Yes. Check all that apply: | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☑ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ 107,133.45 |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $ _____ |
| | *Amounts are subject to adjustment on 4/01/16 and every 3 years after that for cases begun on or after the date of adjustment. | |

**Part 3:    Sign Below**

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.
18 U.S.C. §§ 152, 157, and 3571.

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorsor, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date  03/22/2016
                  MM / DD / YYYY

/s/ FAYE GARRETT
(Signature)

Print the name of the person who is completing and signing this claim:

| | | |
|---|---|---|
| Name | FAYE | GARRETT |
| | First name        Middle name | Last name |
| Title | Bankruptcy Specialist | |
| Company | Internal Revenue Service | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | |
| Address | Insolvency Group 5 300 North Los Angeles St, M/S 5022 | |
| | Number        Street | |
| | Los Angeles | CA | 90012 |
| | City | State | ZIP Code |

Contact Phone  304-579-6070          Email: _____

**094**

# Proof of Claim for Internal Revenue Taxes

Department of the Treasury/Internal Revenue Service



**Form 410**
Attachment

**In the Matter of:** FRANK & LAUREN ADLER
1028 LAMBOURNE PLACE
OAK PARK, CA 91377

| Case Number |
| --- |
| 1:16-BK-10099-VK |

| Type of Bankruptcy Case |
| --- |
| CHAPTER 7A |

| Date of Petition |
| --- |
| 01/13/2016 |

The United States has not identified a right of setoff or counterclaim. However, this determination is based on available data and is not intended to waive any right to setoff against this claim debts owed to this debtor by this or any other federal agency. All rights of setoff are preserved and will be asserted to the extent lawful.

## Unsecured Priority Claims   under section 507(a)(8) of the Bankruptcy Code

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
| --- | --- | --- | --- | --- | --- |
| XXX-XX-7887 | INCOME | 12/31/2012 | 06/03/2013 | $22,905.00 | $1,968.13 |
| XXX-XX-7887 | INCOME | 12/31/2013 | 06/02/2014 | $5,056.00 | $286.58 |
| XXX-XX-7887 | INCOME | 12/31/2014 | 11/23/2015 | $66,896.00 | $1,517.74 |
| XXX-XX-7887 | INCOME | 12/31/2015 | *1* Unassessed-No Return | $8,504.00 | $0.00 |
| | | | | $103,361.00 | $3,772.45 |

### Total Amount of Unsecured Priority Claims:   $107,133.45

## Unsecured General Claims

| Taxpayer ID Number | Kind of Tax | Tax Period | Date Tax Assessed | Tax Due | Interest to Petition Date |
| --- | --- | --- | --- | --- | --- |
| XXX-XX-7887 | INCOME | 12/31/2009 | 10/18/2010 | $2,169.00 | $3,844.94 |
| XXX-XX-9586 | INCOME | 12/31/2015 | *2* NOT FILED | $100.00 | $0.00 |
| | | | | $2,269.00 | $3,844.94 |

Penalty to date of petition on unsecured priority claims (including interest thereon) . . . . . . $6,923.30
Penalty to date of petition on unsecured general claims (including interest thereon) . . . . . . $4,503.97

### Total Amount of Unsecured General Claims:   $17,541.21

*1 UNASSESSED TAX LIABILITY(IES) HAVE BEEN LISTED ON THIS CLAIM BECAUSE OUR RECORDS SHOW NO RETURN(S) FILED. WHEN THE DEBTOR(S) FILES THE RETURN OR PROVIDES OTHER INFORMATION AS REQUIRED BY LAW THE CLAIM WILL BE AMENDED*

*2 THE ABOVE LIABILITY HAS BEEN LISTED AS A POTENTIAL LIABILITY FOR THE DEBTOR BECAUSE THE RETURN HAS NOT BEEN FILED. AS SOON AS THE DEBTOR FILES THE RETURN WITH THE IRS AS RE-QUIRED BY LAW THIS CLAIM WILL BE ADJUSTED TO REFLECT THE ASSESSED LIABILITY*

Page 1 of 1

# EXHIBIT F

Recording Requested By:
Nationwide Title Clearing, Inc.
When Recorded Return To:
FRANK ADLER
C/O DERIK N LEWIS ESQ
ALISO VIEJO, CA 92656

20150520-00076510-0  1/1
Ventura County Clerk and Recorder
MARK A. LUNN
05/20/2015 10:41:20 AM
942465  $48.00  VA

Electronically Recorded in Official Records,
County of Ventura

Loan #: 100900429400135186

## SUBSTITUTION OF TRUSTEE and FULL RECONVEYANCE

The undersigned, JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, as the current beneficiary of that certain Deed of Trust executed by FRANK ADLER (Trustor), and recorded 11/29/2006 in the Office of the Recorder of VENTURA County, State of California, Instrument # 20061129-00251253-0, of Official Records, does in accordance with the provisions of said Deed of Trust hereby substitute J.P. MORGAN CHASE CUSTODY SERVICES, INC. as Trustee in place and stead of the Trustee therein, and does hereby vest J.P. MORGAN CHASE CUSTODY SERVICES, INC. as substituted Trustee with all rights, title, estate, power, duty and trusts conferred by said Deed of Trust.

Dated on  5/18/15  (MM/DD/YYYY)
JPMORGAN CHASE BANK, NATIONAL ASSOCIATION

Amy Kight   VICE PRESIDENT

WHEREAS the current beneficiary having represented to the Trustee that the obligation secured by said Deed of Trust has been fully paid and/or satisfied,

NOW THEREFORE, J.P. MORGAN CHASE CUSTODY SERVICES, INC.,as substituted Trustee, DOES HEREBY GRANT AND RECONVEY unto the parties entitled thereto, without warranty, all the estate and interest granted to said Trustee under said Deed of Trust in the lands therein described, situated in the County of VENTURA, State of California. Reference being hereby made specifically to said Deed of Trust and the record thereof for a particular description of said lands.

J.P. MORGAN CHASE CUSTODY SERVICES, INC.

Vicki Strickland   VICE PRESIDENT

STATE OF LOUISIANA   PARISH OF OUACHITA
The foregoing instrument was acknowledged before me on  5/18/15  (MM/DD/YYYY), by  Amy Kight and Vicki Strickland  as VICE PRESIDENT and  VICE PRESIDENT , respectively, on behalf of their respective entities, who, as such VICE PRESIDENT and  VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. They are personally known to me.

••••••••••••••••••

Bridget A. Chunn #64479
Notary Public - State of LOUISIANA
Commission expires: LIFETIME

BRIDGET A. CHUNN
OUACHITA PARISH, LOUISIANA
LIFETIME COMMISSION
NOTARY ID # 64479

Document Prepared By: E.Lance/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152
CHAS6 26401841 _7 WAMU  T1515051617  [C-1]  RCNCA61

*D0010416420*

096

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

U.S. Bank Tower, 633 West 5th Street, Suite 2600, Los Angeles, CA 9007

A true and correct copy of the foregoing document entitled (*specify*):

**MOTION FOR ORDER AUTHORIZING TRUSTEE TO SELL REAL PROPERTY FREE AND CLEAR OF LIENS; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATIONS IN SUPPORT**

will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On January 19, 2017, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

United States Trustee: United States Trustee (SV), ustpregion16.wh.ecf@usdoj.gov
Trustee: Nancy Zamora, zamora3@aol.com, nzamora@ecf.epiqsystems.com
Debtors' Counsel: Derik N. Lewis, dlewis@vantislaw.com, esieg@vantislaw.com
Creditors' Counsel: Edward A. Treder, cdcaecf@bdfgroup.com; Sheryl K. Ith, sith@cookseylaw.com, sith@ecf.courtdrive.com;
Darlene C. Vigil, cdcaecf@bdfgroup.com; Adam N. Barasch, anb@severson.com, dgl@severson.com;efiling@severson.com

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On January 19, 2017, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

Debtors: Frank & Lauren Adler, 300 Center Dr., Suite 362, Superior, CO 80027
Trustee's Broker: Behnaz Tavakoli, Rodeo Realty, Inc., 23901Calabasas Road, Suite 1050 Calabasas, CA 91302
Trustee's CPA: Sam Leslie, CPA, LEA Accountancy, LLP, 3435 Wilshire Blvd, Suite 990, Los Angeles, CA 90010
Title: Sheila Isham, Fidelity National Title Company, 5000 Van Nuys, # 500, Sherman Oaks, CA 91403
Escrow: Jenica Pivnik, Encore Escrow, 23901 Calabasas Rd., # 1033, Calabasas, CA 91302
Buyer: Megan and Matthew Nelson c/o Hillary Koch, Real Living Pacific Realty, 5743 Corsa Ave., #119, Westlake Village, CA 91362
Secured Creditor: Bankruptcy Section MS A340, Franchise Tax Board, P.O. Box 2952, Sacramento, CA 95812
U.S Trustee: Kate Bunker, Esq., Office of the United States Trustee, 915 Wilshire Blvd., Suite 1850, Los Angeles, CA 90017
Judge: The Honorable Victoria S. Kaufman, U.S. Bankruptcy Court, 21041 Burbank Boulevard, Suite 354,
Woodland Hills, CA 91367

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL (state method for each person or entity served)**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on January 19, 2017, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 19, 2017 | Cynthia Casas | /s/ Cynthia Casas |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**F 9013-3.1.PROOF.SERVICE**